United States Court of Appeals,

Fifth Circuit.

Nos. 91–6363, 91–6364.

In re INTERNATIONAL PAPER COMPANY, Petitioner.

Alexander GRASSI, Sr., etc., Plaintiffs–Appellees,

v.

INTERNATIONAL PAPER COMPANY, Defendant–Appellant.

June 1, 1992.

Petition for Writ of Mandamus to the United States District Court for the Southern District of Texas.

Appeal from the United States District Court for the Southern District of Texas.

Before SNEED[*], REAVLEY and BARKSDALE, Circuit Judges.

REAVLEY, Circuit Judge:

The district court remanded this case to state court "in the spirit of federalism." Because the district court lacked authority to remand on that ground, we grant International Paper Company's petition for a writ of mandamus and vacate the district court's remand order.

I. BACKGROUND

In 1983, Alexander and Karen Grassi, acting individually and as next friends of their three children, filed suit in Texas state court alleging that the insulation in their home released formaldehyde gases that caused them physical and emotional injuries. The Grassis ultimately joined Ciba Geigy PLC (CG–PLC), an English corporation which manufactured the insulation, as a defendant in the case. CG–PLC received notice in 1985 but failed to appear. On September 28, 1986, the state court entered a default judgment against CG–PLC for $21,382,843.

---

[*]Circuit Judge of the Ninth Circuit, sitting by designation.

While investigating ways to enforce this judgment, the Grassis discovered that CG–PLC owned all of the shares of another English corporation, Ilford Limited, which in turn owned all of the shares of Ilford Photo Corporation, a Delaware corporation with headquarters in New Jersey. Ilford Photo was apparently the only asset that CG–PLC owned or controlled in the United States. On October 26, 1988, the Grassis filed an application for turnover relief in the Texas court that entered the original judgment, seeking an order requiring Ilford Limited, on behalf of CG–PLC, to turn over the Ilford Photo shares to the county sheriff for execution. Under the Texas "turnover statute," a court may order a judgment debtor to turn over nonexempt property that is "in the debtor's possession or is subject to the debtor's control." TEX.CIV.PRAC. & REM. § 31.002(b)(1) (Vernon 1986). As permitted by the turnover statute, the Grassis filed the application for turnover relief as a continuation of the suit that they originally filed in 1983. *See id.* § 31.002(d).

Ilford Photo removed the turnover proceeding to federal court on November 23, 1988, alleging federal diversity jurisdiction under 28 U.S.C. § 1332. The Grassis moved for remand to state court, arguing that, because the turnover proceeding was a continuation of the suit that they originally filed in 1983, 28 U.S.C. § 1446(b) prevents removal. Under section 1446(b), "a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action." The district court agreed with the Grassis and remanded the case on March 14, 1989.

During the delay caused by the removal and remand, Ciba Geigy Limited (CG–Limited), which owns CG–PLC, pursued plans to sell its interest in Ilford Photo. Less than a month after the district court remanded the turnover application to state court, International Paper Company purchased Ilford Photo and other related businesses from CG–Limited for $241 million. As part of this deal, CG–Limited agreed to indemnify International Paper for any losses that might arise from the pending turnover proceeding.

On August 29, 1990, the Grassis voluntarily dismissed their original turnover action and filed an amended application for turnover relief (the Amended Application) in the state court. The Grassis named International Paper as a defendant in the Amended Application, and alleged that International Paper purchased Ilford Photo in violation of the Uniform Fraudulent Transfer Act (UFTA), TEX.BUS. & COM.CODE §§ 24.001–.013 (Vernon 1987). The Grassis asked the state court to: (1) hold that, under section 24.008(a)(1) of the UFTA, the transfer of Ilford Photo was void to the extent necessary to satisfy the original judgment; and (2) order International Paper to turn over the Ilford Photo shares that it fraudulently acquired. Like the original application, the Grassis filed the Amended Application as a continuation of the suit that they originally filed in 1983.

International Paper removed the Grassis' Amended Application to federal court on September 21, 1990. In its notice of removal, International Paper asserted that the fraudulent transfer claim constitutes a new and independent civil action and thus is removable despite the one-year rule of section 1446(b). CG–PLC did not join International Paper's notice of removal. On October 10, 1990, the Grassis filed a motion to remand, in which they argued that: (1) because the fraudulent transfer claim is part of the Amended Application for turnover relief, it is not a new and independent action and thus section 1446(b)'s one-year rule prohibits removal; and (2) because the transfer was fraudulent, CG–PLC retained an equitable interest in Ilford Photo and thus CG–PLC's failure to join in International Paper's notice of removal required remand.

The district court granted the Grassis' motion to remand on December 13, 1991. Because the parties dispute the district court's reason for granting remand, we quote much of the district court's order:

> After extensively reviewing the pleadings, the motions and the numerous accompanying briefs, it seems one question is begging to be asked before a motion to remand can be granted. That question concerns whether or not fraud has occurred. If there is no fraud, then this case rightfully belongs in this court as a separate and independent action court under diversity jurisdiction. On the other hand, if fraud exists, the plaintiffs' claim to the contested property is a direct extension of the state court suit for turnover relief and properly

belongs in state court because of Ciba Geigy PLC's delay in filing for removal. Though on its face [International Paper] is a "new" party, that again is entangled in the issue of whether fraud exists.

> In *American National Bank of Austin v. Mortgageamerica Corp.,* 714 F.2d 1266 (5th Cir.1983), the Fifth Circuit dealing with the application of the Texas Fraudulent Transfers Act stated such an action was:

>> essentially one for property which properly belongs to the debtor and which the debtor has fraudulently transferred in an effort to put out of reach of the creditors.... The transferee may have colorable title to the property, but the equitable interest—at least as far as the creditors (but not the debtor) are concerned—is considered to remain in the debtor so that creditors may attach or execute judgment upon it as though the debtor had never transferred it.

> *Id.* at 1275. If this court were to delve into the existence of fraud in determining whether this case should be remanded, then the heart of the litigation would be settled. If it was found fraud existed, this court would have to remand to state court with the bulk of the matter predetermined before the state fact finder had an opportunity to make its own findings. In the spirit of federalism it would be wiser to leave this essential finding in the hands of the state court.

On December 30, 1991, International Paper filed a notice of appeal and, alternatively, a petition for writ of mandamus. We consider these together.

## II. DISCUSSION

### A. REVIEWABILITY

Whenever a party asks this court to vacate or reverse a district court's remand order, "the threshold question that confronts us is whether we have jurisdiction to consider [the] petition." *In re Allied–Signal, Inc.* 919 F.2d 277, 279 (5th Cir.1990). "An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." 28 U.S.C. § 1447(d). The Supreme Court has construed section 1447(d) *in pari materia* with section 1447(c) and concluded that "only remand orders issued under § 1447(c) and invoking the grounds specified therein ... are immune from review under § 1447(d)." *Thermtron Products, Inc. v. Hermansdorfer,* 423 U.S. 336, 346, 96 S.Ct. 584, 590, 46 L.Ed.2d 542 (1976). In light of Congress' post-*Thermtron* amendment of section 1447(c), this court has concluded that "remand orders for lack of subject matter jurisdiction [are] the only clearly unreviewable remand orders." *In re Shell Oil Co.,* 932 F.2d 1518, 1520 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 914, 116 L.Ed.2d 814 (1992).

Although it is an open question, section 1447(d) may also prevent us from reviewing remand orders that are based on a timely-filed motion that alleges a "defect in removal procedure." *See id.* at 1520 n. 5; *McDermott Int'l, Inc. v. Lloyds Underwriters of London,* 944 F.2d 1199, 1201 (5th Cir.1991). We need not reach that question in this case.

The Grassis contend that section 1447(d) prevents us from reviewing this remand order because the district court based it on a lack of subject matter jurisdiction and on a timely motion alleging a defect in removal procedure. According to the Grassis' interpretation of the remand order, the district court accepted their arguments that section 1446(b)'s one-year rule and CG–PLC's failure to join the notice of removal required remand. We disagree. The district court believed that the one-year rule would require remand *if* the transfer of Ilford Photo to International Paper was fraudulent because, in that case, the existence of fraud would allow the turnover action to proceed against International Paper as an extension of the 1983 suit. But the court also believed that, if it determined that fraud was involved in the transfer, there would be little left to remand because the existence of fraud was the essential fact issue in the turnover proceeding. So the court remanded the case because "[i]n the spirit of federalism it would be wiser to leave this essential finding in the hands of the state court."

Because the district court remanded this case "in the spirit of federalism," and not because it lacked subject matter jurisdiction or because of a defect in removal procedure, section 1447(d) does not prevent us from reviewing the remand order.

B. REVIEW BY APPEAL OR MANDAMUS?

We now consider whether we review the district court's remand order by appeal or mandamus. *McDermott* recently addressed this question, and we need not repeat that discussion here. *See* 944 F.2d at 1201–04. When a district court has remanded a case without authority to do so, we review by mandamus. *Id.* at 1203 (citing *Thermtron,* 423 U.S. at 352–53, 96 S.Ct. at 594).

Presumably, we will always vacate a remand order that we review by mandamus because the district court lacked authority to remand the case on the stated grounds. If, however, the district court had authority to remand on the stated grounds, we review by appeal to determine whether the court properly exercised its authority in that particular case. *Id.* at 1203–04.

As this court explained in *McDermott,* there are three potential sources of a district court's authority to remand a case: (1) statutes that grant such authority; (2) a contract between the parties; and (3) circumstances that give the court discretion to dismiss the case. *Id.* at 1204. The district court in the present case, however, based its remand order on "the spirit of federalism," and not on one of these three sources. Because the district court remanded this case without authority to do so, we review by mandamus and vacate the district court's remand order.

C. DISPOSITION

We remand this case for the district court to consider the merits of the Grassis' motion to remand, and we offer the following guidance for the court's consideration. The Grassis argued that section 1446(b)'s one-year rule and CG–PLC's failure to join International Paper's notice of removal made removal improper. If the Grassis' Amended Application is a continuation of the action filed in 1983, then the Grassis are correct. The district court believed that, to determine whether it could treat the Amended Application as a continuation of the suit filed in 1983, it needed to determine whether there was fraud in the transfer of Ilford Photo. But the question is actually whether, under Texas law, a plaintiff may seek turnover relief from a new defendant by alleging that the new defendant obtained the property in violation of the UFTA and thus the original defendant (the judgment debtor) retains ownership or control of the property. The key jurisdictional question is not, as the district court believed, whether there was in fact fraud in the transfer, but whether the Grassis can seek to prove that there was fraud in the transfer as part of their attempt to obtain relief under the turnover statute.

If the district court determines that the Grassis can allege that International Paper is a fraudulent transferee as part of their claim for turnover relief, then the Amended Application is an extension of the 1983 suit and the district court must remand this case to state court under the one-year rule of section 1446(b).  If the Grassis cannot include the fraud claim in the turnover application, then the Amended Application asserts a fraudulent transfer claim against International Paper that is separate and independent from the 1983 suit.

We GRANT the petition for mandamus, VACATE the district court's remand order, and REMAND the case to the district court.  International Paper's appeal is DISMISSED.