United States Court of Appeals,

Fifth Circuit.

No. 92-5544.

Fuerza UNIDA, et al., Plaintiffs-Appellants,

v.

LEVI STRAUSS & COMPANY, Defendant-Appellee.

March 29, 1993.

Appeal from the United States District Court for the Western District of Texas.

Before REAVLEY, KING, and WIENER, Circuit Judges.

KING, Circuit Judge:

Former employees of Levi Strauss & Company filed this class action lawsuit in Texas state court. They alleged that Levi Strauss, by closing its plant in San Antonio, Texas, violated state and federal laws. Levi Strauss removed the case to federal district court. The district court entered summary judgment in favor of Levi Strauss on all of the former employees' claims, and the employees appealed. Finding no error, we affirm the district court's judgment in favor of Levi Strauss.

## I. BACKGROUND

The undisputed facts in this case reveal that, in September 1981, Levi Strauss & Company acquired a plant in San Antonio, Texas ("the San Antonio plant") for the purpose of manufacturing sports coats. Levi Strauss attempted to continue the production of sports coats, but over time, production steadily declined. Accordingly, in 1987, Levi Strauss converted the San Antonio plant to the production of "Dockers" pants.

In the fall of 1989, Levi Strauss' projected production requirements for Dockers pants decreased significantly. As a result of this projected decrease, Levi Strauss decided to close one of its plants. After comparing the costs of producing Dockers pants among the various locations where such clothing was produced, Levi Strauss announced that it planned to close its plant in San Antonio. This lawsuit arose from the closing of that plant.

On April 20, 1990, certain employees who were terminated upon the closing of the San

Antonio plant ("the Plaintiffs") filed a class action lawsuit against Levi Strauss in Texas state court. In their state law petition, the Plaintiffs asserted one state law claim[1] and three ERISA claims. One of the Plaintiffs' ERISA claims charged Levi Strauss with closing the San Antonio plant for the purpose of depriving the Plaintiffs of employment benefits, including pension, severance, and disability benefits, in violation of section 510 of ERISA, 29 U.S.C. § 1140. Levi Strauss subsequently removed the case to federal district court on both diversity of citizenship and federal question grounds.

After the case was removed to federal court, the Plaintiffs reshaped their lawsuit against Levi Strauss. First, the Plaintiffs amended their federal complaint to add three new claims, including one based on the nondiscrimination provision of the Texas workers' compensation statute, TEX.REV.CIV.STAT.ANN. art. 8307c ("the article 8307c claim"). The Plaintiffs then moved to dismiss three of their seven claims, and the district court obliged, dismissing the specified claims. The Plaintiffs thus settled on asserting four claims against Levi Strauss. Specifically, the Plaintiffs alleged that: (1) they were wrongfully discharged under section 510 of ERISA; (2) Levi Strauss had improperly calculated pension benefits and severance pay, in violation of section 204 of ERISA; (3) the closure of the San Antonio plant discriminated against the *subclass* of plant employees who had filed workers' compensation claims or who had otherwise taken steps to obtain workers' compensation benefits, in violation of TEX.REV.CIV.STAT.ANN. art. 8307c; and (4) Levi Strauss had breached an agreement to pay them profit-sharing or a bonus of $500.[2]

---

[1]The state law claim originally asserted by the Plaintiffs was based on the Texas Supreme Court's decision in *McClendon v. Ingersoll-Rand Co.,* 779 S.W.2d 69 (Tex.1989), which recognized a common-law cause of action for the termination of employment to escape pension obligations. The Texas court's decision in *McClendon,* however, was subsequently reversed by the Supreme Court in *Ingersoll-Rand Co. v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), on ERISA preemption grounds.

[2]By order of the district court, the plaintiff class was defined differently for the different claims being asserted by the Plaintiffs. With respect to the Plaintiffs' article 8307c claim, the class was defined as

> All former employees of Levi Strauss & Co.'s [San Antonio] plant who (a) filed workers' compensation claims prior to the date Levi Strauss & Co. made the decision to close the plant, (b) were employed by Levi Strauss & Co. at the [San Antonio] plant (whether active employees or on workers' compensation leave of

Levi Strauss moved for summary judgment on all of the Plaintiffs' remaining claims. The motion was referred to a magistrate judge, who recommended that the motion be granted in its entirety. With respect to the Plaintiffs' claim under section 510 of ERISA, the magistrate judge concluded that the Plaintiffs had failed to raise a genuine issue of material fact on an essential element of their claim—namely, that Levi Strauss had specific intent to interfere with the Plaintiffs' employment benefit rights. Moving to the Plaintiffs' second remaining claim, the magistrate judge determined that no genuine issues of material fact existed with respect to Levi Strauss' alleged miscalculation of benefits and severance pay. As for the Plaintiffs' article 8307c claim, the magistrate judge determined: (1) that much of the evidence presented by the Plaintiffs was not probative or relevant on the issue of whether members of the subclass were being discriminated against for filing or initiating claims for workers' compensation benefits, and (2) that the Texas statutory provision being relied on by the Plaintiffs does not prohibit an employer from closing an entire plant based on costs that include workers' compensation costs. Finally, with respect to the Plaintiffs' claim that Levi Strauss had breached an agreement to pay them profit-sharing or a bonus of $500, the magistrate judge concluded that the Plaintiffs "neither presented evidence on this point nor made any argument with regard to it."

The district court, after reviewing de novo the magistrate judge's conclusions and recommendations and considering the Plaintiffs' objections to his evaluation of evidence, adopted the magistrate judge's findings and legal conclusions. Accordingly, the district court granted Levi Strauss' motion for summary judgment and dismissed with prejudice all four of the Plaintiffs' remaining claims. The Plaintiffs now appeal from the district court's order granting summary judgment in favor of Levi Strauss.

## II. ANALYSIS

absence) as of the date of announcement of the plant closure (January 17, 1990), and (c) lost their employment as a result of the closure.

With respect to the other three claims asserted by the Plaintiffs, however, the class was broadly defined as all former Levi Strauss employees who were terminated as a result of the plant closure.

The Plaintiffs essentially raise two arguments on appeal. First, they argue that the district court erred in refusing to dismiss their ERISA claims and remand the case to state court. They also contend that the district court erred in granting summary judgment on their article 8307c claim and their ERISA section 510 claim. We address each of these contentions in turn.

A. The District Court's Refusal to Dismiss the Plaintiffs' ERISA Claims and Remand the Case to State Court

After Levi Strauss moved for summary judgment, the Plaintiffs filed a motion requesting the district court to dismiss their federal claims under ERISA and remand the case to state court. In that motion, the Plaintiffs reasoned:

> The provision of 28 U.S.C. Section 1445(c) expresses a public policy favoring the litigation of a civil action arising under the workers' compensation laws of the state in state court. Where an action removed to federal court on the grounds of diversity is reduced by dismissal of other causes of action to workers' compensation retaliation only, then a remand is proper. *Dombrowski v. Continental Can. Co.,* 711 F.Supp. 433 (N.D.Ill.1989).

Although the district court did not expressly deny the Plaintiffs' motion to dismiss and remand, by entering summary judgment on all of the Plaintiffs' claims, the district court impliedly denied the motion. *See Addington v. Farmer's Elevator Mut. Ins. Co.,* 650 F.2d 663, 666 (5th Cir.), *cert. denied,* 454 U.S. 1098, 102 S.Ct. 672, 70 L.Ed.2d 640 (1981).

The Plaintiffs argue that the district court abused its discretion in refusing to dismiss their federal claims and remand the case to state court. Specifically, they argue that "principles of comity and federalism require that a federal court avoid interpretation of state law when such is unnecessary." For the following reasons, their argument is without merit.

First, it is important to note that before the district court could have abused its discretion in refusing to remand the case to state court, the district court must have abused its discretion in refusing to dismiss the Plaintiffs' federal claims. Here, the Plaintiffs sought to have their federal claims dismissed without prejudice (i) over one and a half years after the case was removed, (ii) after both sides had conducted substantial discovery, and (iii) after Levi Strauss' motion for summary judgment had been pending for almost five months. Given these circumstances, it cannot be said that the district court abused its discretion in denying the Plaintiffs' motion to dismiss their federal claims. As Levi Strauss correctly points out, "[w]here the plaintiff does not seek dismissal until a late stage

and the defendants have exerted significant time and effort, the district court may, in its discretion, refuse to grant a voluntary dismissal." *Hartford Accident & Indem. Co. v. Costa Lines Cargo Servs., Inc.,* 903 F.2d 352, 360 (5th Cir.1990).

Second, even if the district court had erred in refusing to dismiss the Plaintiffs' federal claims, the district court would not have abused its discretion in refusing to remand the case to state court. As Levi Strauss correctly notes, the district court had diversity jurisdiction over the Plaintiffs' article 8307c claim, which, incidentally, was added only after the case had been removed from state court. Under *Pope v. MCI Telecommunications Corp.,* 937 F.2d 258, 262-63 (5th Cir.1991), *cert. denied,* --- U.S. ----, 112 S.Ct. 1956, 118 L.Ed.2d 558 (1992), the district court would have been well within its discretion to deny the Plaintiffs' motion to remand. Indeed, the district court would have likely erred in remanding the case to state court solely on principles of "federalism and comity." *See In re International Paper Co.,* 961 F.2d 558, 561 (5th Cir.) (holding that district court order remanding case to state court in "the spirit of federalism"—and not on grounds that district court lacked subject matter jurisdiction—should be vacated), *cert. denied,* --- U.S. ----, 113 S.Ct. 326, 121 L.Ed.2d 245 (1992).

Finally, it appears that the Plaintiffs' motion to dismiss and remand was an attempt to manipulate the forum in which their case was to be heard. In *Brown v. Southwestern Bell Telephone Co.,* 901 F.2d 1250, 1255 (5th Cir.1990), this court stated:

> [C]ourts should consider whether the plaintiff has attempted to manipulate the forum in which his case will be heard simply by deleting all federal-law claims from the complaint and requesting that the district court remand the case, and should guard against such manipulation by denying motions to remand where appropriate.

(internal quotations omitted). Under *Brown,* the district court could have properly denied the Plaintiffs' motion to remand as representing an attempt to manipulate the forum. At the very least, the district court did not abuse its discretion in refusing to dismiss the Plaintiffs' federal claims and remand the case to state court.

B. The District Court's Decision to Grant Summary Judgment

The Plaintiffs also argue that the district court erred in granting summary judgment on two of their claims. In particular, the Plaintiffs argue that the district court erred in granting summary

judgment on their article 8307c claim. The Plaintiffs also argue that summary judgment was inappropriate on their ERISA section 510 claim.[3]

We initially note that, in reviewing a summary judgment, we apply the same standard as the district court. *Waltman v. International Paper Co.,* 875 F.2d 468, 474 (5th Cir.1989). We ask specifically whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). In answering the first part of this question, we view all evidence and the inferences to be drawn from the evidence in the light most favorable to the party opposing the motion. *Marshall v. Victoria Transp. Co.,* 603 F.2d 1122, 1123 (5th Cir.1979) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). Questions of law, on the other hand, are subject to de novo review. *Netto v. Amtrak,* 863 F.2d 1210, 1212 (5th Cir.1989).

We further note that we must review the district court's decision to grant Levi Strauss' motion for summary judgment under the principles set forth by the Supreme Court in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In that case, the Court held that a motion for summary judgment must be granted if, after adequate time for discovery, the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. The Court reasoned:

> In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Id.* at 322-23, 106 S.Ct. at 2552. And, although the Court reiterated that it is the party moving for summary judgment who "bears the initial responsibility" of demonstrating the absence of a genuine issue of material fact, the Court also emphasized that the moving party need not negate the

---

[3]The Plaintiffs do not argue that the district court erred in granting summary judgment on their ERISA section 204 claim or on their claim that Levi Strauss breached an agreement to pay them profit-sharing or a bonus of $500.

opponent's claim. *Id.* at 323, 106 S.Ct. at 2553. After all, the Court continued, "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Id.* at 323-24, 106 S.Ct. at 2553.

With these summary judgment principles in mind, we now turn to the two claims at issue on this appeal. Regarding the Plaintiffs' article 8307c claim, we conclude that, on the undisputed facts of this case, Levi Strauss is entitled to judgment as a matter of law. As for the Plaintiffs' ERISA section 510 claim, we conclude that, under the principles set forth in *Celotex,* the district court correctly granted summary judgment in favor of Levi Strauss.

1. *The Article 8307c Claim*

The Plaintiffs contend that the district court erred in granting summary judgment on their article 8307c claim. Their argument in this regard is two-fold. At a broad level, they contend that all article 8307c claims are inappropriate for summary judgment. They argue that "[s]ummary judgment is an inappropriate tool for resolving claims of employment discrimination, which involve nebulous questions of motivation and intent." At a more specific level, they contend that summary judgment is inappropriate with respect to their particular article 8307c claim. They argue that there are genuine issues of material fact precluding summary judgment in favor of Levi Strauss.[4]

---

[4]The Plaintiffs have also raised three other challenges to the district court's decision to grant summary judgment on their article 8307c claim. Our rejection of these challenges, however, requires little discussion.

First, in their brief on appeal, the Plaintiffs suggest that the district court "implicitly found" it lacked subject matter jurisdiction over their article 8307c claim. At oral argument, however, the Plaintiffs conceded that they had misread the district court's opinion and that the district court indisputably had diversity jurisdiction over their article 8307c claim. We agree.

Second, the Plaintiffs argue—for the first time in their reply brief—that the district court's interpretation of article 8307c violates the open courts provision of the Texas Constitution, TEX. CONST. art. I, § 13. By failing to raise this argument until their reply brief, the Plaintiffs have waived it. *Blumberg v. HCA Management Co.,* 848 F.2d 642, 646 (5th Cir.1988) ("we have repeatedly held that we will not consider alleged errors raised" for the first time in a reply brief), *cert. denied,* 488 U.S. 1007, 109 S.Ct. 789, 102 L.Ed.2d 781 (1989).

Third, the Plaintiffs argue—again, for the first time in their reply brief—that the district court committed "manifest error" in upholding the magistrate judge's order that Plaintiffs resubmit their summary judgment evidence. We decline to address this

(a) *The broad challenge to the district court's grant of summary judgment.* The Plaintiffs' broad argument that article 8307c claims are categorically inappropriate for resolution by summary judgment may be easily rejected. As Levi Strauss correctly points out, the Plaintiffs' argument conflicts with this court's statement in *Clark v. Resistoflex Co.,* 854 F.2d 762, 771 (5th Cir.1988), that "[a] party against whom summary judgment is sought cannot raise a fact issue simply by "asserting a cause of action to which state of mind is a material element.' " (quoting *Hahn v. Sargent,* 523 F.2d 461, 468 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976)). Moreover, there have been several cases in which this court has affirmed summary judgments in favor of defendants on article 8307c claims. *See, e.g., Swearingen v. Owens-Corning Fiberglas Corp.,* 968 F.2d 559, 561 (5th Cir.1992) (affirming district court's summary judgment in favor of employer on plaintiff's article 8307c claim); *Pope v. MCI Telecommunications Corp.,* 937 F.2d 258, 264-65 (5th Cir.1991) (same), *cert. denied,* --- U.S. ----, 112 S.Ct. 1956, 118 L.Ed.2d 558 (1992). Thus, the Plaintiffs are incorrect when they argue that article 8307c claims are categorically inappropriate for resolution by summary judgment.

(b) *The specific challenge to the district court's grant of summary judgment.* The Plaintiffs' specific challenge to the district court's decision to grant summary judgment on their article 8307c claim presents a novel question. Specifically, we are asked to decide whether an employer who closes a plant because of high costs that include workers' compensation costs, and in doing so discharges employees who have and employees who have not engaged in workers' compensation activities, violates article 8307c. Because we conclude that such conduct does not violate article 8307c, we hold that the district court correctly granted summary judgment in favor of Levi Strauss.

In granting summary judgment in favor of Levi Strauss on the Plaintiffs' article 8307c claim, the district court first held that there can be no violation of article 8307c unless an employer *discriminates* against an employee who has engaged in workers' compensation activities. The district

argument, because the Plaintiffs did not appeal the magistrate judge's order to the district court. *See Boren v. N.L. Indus., Inc.,* 889 F.2d 1463, 1465 (5th Cir.1989) (concluding that appellate court does not have jurisdiction to review magistrate judge's evidentiary ruling, where the ruling was not first appealed to the district court), *cert. denied,* 497 U.S. 1029, 110 S.Ct. 3283, 111 L.Ed.2d 792 (1990).

court further concluded that an employer cannot discriminate against employees who have engaged in workers' compensation activities by closing an entire plant due to high costs, even if workers' compensation costs contribute to those high costs. Finally, the district court determined that, on the undisputed facts of this case, Levi Strauss was entitled to judgment as a matter of law. It reasoned that, because the plant closing affected all workers at the San Antonio plant—including those who had not engaged in workers' compensation activities—there could be no discrimination in violation of article 8307c.

The Plaintiffs primarily contend that the district court interpreted article 8307c too narrowly and, on appeal, ask us to construe article 8307c broadly. In particular, they argue that they can prevail under article 8307c by showing: "(1) that they were discharged *or* discriminated against, and (2) that there was a causal link between their discharges and/or the discrimination they suffered, and their workers' compensation activities." Thus, they contend that, contrary to the district court's conclusion, article 8307c was meant to cover situations in which an entire plant is closed because of high costs that include high workers' compensation costs. For the following reasons, we decline to interpret article 8307c in such a broad fashion.

First, the Plaintiffs' broad interpretation of article 8307c is inconsistent with the express language of the statute. Article 8307c of the Texas Workers' Compensation Act, entitled "Protection of claimants from discrimination by employers," is a plainly-worded statute. *See Swearingen,* 968 F.2d at 559. It provides:

> No person may *discharge or in any other manner discriminate* against any employee because the employee has in good faith filed a claim, hired a lawyer to represent him in a claim, instituted, or caused to be instituted, in good faith, any proceeding under the Texas Workmen's Compensation Act, or has testified or is about to testify in any such proceeding.

TEX.REV.CIV.STAT.ANN. art. 8307c § 1 (emphasis added). Both the title and the express language of the statute indicate that only *discrimination* against employees engaged in the specified workers' compensation activities is prohibited. By using the words "discharge or in any other manner discriminate," the Texas legislature recognized that "discharging" an employee who has engaged in workers' compensation activities is only one manner of discriminating against such an employee. *See Santex, Inc. v. Cunningham,* 618 S.W.2d 557, 559 (Tex.Civ.App.—Waco 1981, no writ) (describing

employer's decision to "discharge" as a "manner of discrimination"). Contrary to the Plaintiffs' suggestion, then, an employee cannot, under a straightforward reading of article 8307c, prevail merely by showing that he was discharged *or* discriminated against.

The Plaintiffs' expansive reading of article 8307c is also inconsistent with our decision in *Swearingen v. Owens-Corning Fiberglas Corporation,* where the plaintiff, a workers' compensation claimant, was terminated under a neutrally applied absence policy. There, we rejected the plaintiff's argument that article 8307c "prohibits termination of an employee for excessive absence when that absence is a result of a work-related injury for which the employee has filed a workers' compensation claim." *See* 968 F.2d at 561. We reasoned that, where an employee is terminated pursuant to a "neutrally-applied absence control policy,"—i.e., a non-discriminatory policy—the employee will not be able to "demonstrate the requisite causal link between her discharge and any of the four activities protected in article 8307c." *Id.* at 563. Accordingly, we refused "to substitute [the plaintiff's] expansive reading of the statute for the plain meaning of the confining language used by the Texas legislature in drafting the narrow exception to the [employment] at-will doctrine in Texas." *Id.* at 562-63.

Today we likewise refuse to substitute the Plaintiffs' expansive reading of article 8307c—one that would virtually prohibit plant closings in Texas—for the plain meaning of article 8307c.[5] We hold that an employee cannot prevail under article 8307c unless he can demonstrate that he was discriminated against, by being discharged or otherwise treated unequally, for engaging in the

---

[5]In support of their "discharge" or "discriminate" framework, the Plaintiffs cite the language of the statute itself and several cases, *see Jones v. Roadway Express, Inc.,* 931 F.2d 1086, 1088 (5th Cir.1991); *Hughes Tool Co. v. Richards,* 624 S.W.2d 598, 599 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.), *cert. denied,* 456 U.S. 991, 102 S.Ct. 2272, 73 L.Ed.2d 1286 (1982); *Azar Nut Co. v. Caille,* 720 S.W.2d 685, 687 (Tex.App.—El Paso 1986), *aff'd,* 734 S.W.2d 667 (Tex.1987). In relying on the language of the statute, the Plaintiffs ignore that the statute prohibits an employer from discharging "or in any other manner" discriminating against an employee who has engaged in workers' compensation activities. Moreover, the cases that the Plaintiffs cite do not address the question of whether a discharge made in connection with the closing of an entire plant—i.e., an arguably "non-discriminatory" discharge—is actionable under article 8307c. Finally, at least one of the cases relied on by the Plaintiffs, *Hughes Tool Co.,* suggests that the reason a discharged employee must show a causal link between her firing and her claim for workers' compensation is to raise an inference that the employer was *discriminating* against the employee. 624 S.W.2d at 599. Thus, the Plaintiffs provide us with no support for their expansive interpretation of article 8307c.

specified workers' compensation activities.  Unless the Plaintiffs have raised a genuine issue of material fact as to whether they were *discriminated* or retaliated against for their workers' compensation activities, then, summary judgment in favor of Levi Strauss was appropriate.

The Plaintiffs maintain that they have raised a fact issue regarding whether they were discriminated against because of their workers' compensation activities.  They argue that, as compared to workers' compensation claimants at other Levi Strauss plants, they were treated differently.  The problem with this argument is that an employer cannot, in our view, engage in discrimination prohibited by article 8307c merely by closing an entire plant and discharging all employees—including those who have not engaged in any of the activities protected by article 8307c.  After all, the word "discrimination" denotes a "failure to treat all persons equally where no reasonable distinction can be found between those favored and those not favored."  BLACK'S LAW DICTIONARY 467 (6th ed. 1990).  We fail to see how an employer is discriminating against, or treating unequally, employees who have engaged in workers' compensation activities when the employer is similarly discharging employees who have not engaged in such activities.

Accordingly, we hold that the district court correctly granted summary judgment in favor of Levi Strauss on the Plaintiffs' article 8307c claim.  The undisputed facts reveal that, because of high costs that include workers' compensation costs, Levi Strauss decided to close the San Antonio plant and discharge employees who had engaged in workers' compensation activities, as well as employees who had not engaged in such activities.  On these facts, the Plaintiffs have failed to make a showing sufficient to establish the existence of an element essential to their claim—namely, that they were *discriminated* against, or treated differently, because of their workers' compensation activities.[6]  Levi

---

[6]To support their argument that they have raised a genuine issue of material fact on the discrimination element, the Plaintiffs point to summary judgment evidence excluded by the district court as being irrelevant or hearsay.  This evidence, they note, indicates that Levi Strauss' decision to close the plant was partly motivated by high workers' compensation costs at the San Antonio plant.  They argue that this evidence, if it had been properly considered by the district court, raises a genuine issue of material fact.  Again, we disagree.  Levi Strauss concedes that its decision to close the San Antonio plant was due to high costs that included high workers' compensation costs.  This *undisputed* fact, however, is immaterial to the question of whether the subclass of terminated employees who had engaged in workers compensation activities was somehow discriminated against by Levi Strauss' decision to close the entire plant and discharge all employees.  At most, the Plaintiffs have demonstrated that they were treated differently because

Strauss is therefore entitled to judgment as a matter of law.

We do not intend, as the Plaintiffs' suggest, to create an *exception* to article 8307c, by asking "whether the alleged discrimination occurred at or near the time a plant closed." Under the plain language of article 8307c, an employer may not close a plant in a manner that discriminates against employees who have engaged in workers' compensation activities. For example, where there is evidence that an employer, in closing a plant, selectively discharges employees who have engaged in workers' compensation activities, those employees could successfully bring an article 8307c claim. We hold only that, when (a) an employer like Levi Strauss closes a plant because of high costs that include high workers' compensation costs, and (b) the plant closure results in non-discriminatory discharges of employees who have and employees who have not engaged in workers' compensation activities, this evidence is legally insufficient to establish an article 8307c violation.

2. *The ERISA Section 510 Claim*

The Plaintiffs also argue that the district court erred in granting summary judgment in favor of Levi Strauss on their claim under section 510 of ERISA. They argue alternatively that (a) specific intent should not be a required element of their prima facie case, and (b) when all inferences are drawn in their favor, they have raised a fact issue regarding whether Levi Strauss, in closing the San Antonio plant, had the specific intent to violate ERISA. As discussed below, we reject both of these arguments and hold that the district court correctly awarded summary judgment in favor of Levi Strauss on the Plaintiffs' ERISA section 510 claim.

The Plaintiffs' argument that they should not be required to demonstrate that Levi Strauss closed the San Antonio plant for the purpose of interfering with their employee benefit rights is not supported by the language of ERISA section 510 or controlling case law. Section 510 prohibits employers from discharging, fining, suspending, expelling, disciplining, or discriminating against a plan participant or beneficiary "for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or *for the purpose of interfering* with the attainment of any right to

___

they worked at the San Antonio plant. The Plaintiffs have simply failed to raise a genuine issue of *material* fact regarding whether they were discriminated against because of their workers' compensation activities.

which such participant may become entitled under the plan...." 29 U.S.C. § 1140 (emphasis added). Moreover, in this circuit, it is now settled that, to recover under Section 510, "the plaintiff must show that the employer had the "specific intent to violate ERISA.' " *Clark v. Resistoflex Co.,* 854 F.2d 762, 770 (5th Cir.1988); *see also Simmons v. Willcox,* 911 F.2d 1077, 1082 (5th Cir.1990) (recognizing that plaintiff was required to demonstrate that the defendants had discharged her "with the specific intent of interfering with her ERISA benefits").

Thus, the Plaintiffs are left to argue that they raised a genuine issue of material fact with regard to whether Levi Strauss closed the San Antonio plant with the specific intent to violate ERISA. In support of its motion for summary judgment, Levi Strauss offered the testimony of Peter Thigpen, the person who ultimately made the decision to close the San Antonio plant, to demonstrate the absence of a specific intent to violate ERISA. Thigpen stated: "[M]y decision to close the San Antonio plant was made without regard to costs associated with pension, workers' compensation, or other employee benefits." To controvert Thigpen's statement that there was no intent to interfere with the Plaintiffs' ERISA benefits, the Plaintiffs pointed to: (1) evidence that the San Antonio plant was closed to "cut costs"; (2) evidence that Levi Strauss decided to close its San Antonio plant rather than cutting back its Program 807 operations in the Caribbean,[7] a labor market where the company did not incur pension and benefit expenses; (3) evidence that, at the time the San Antonio plant was closed, management was aware that benefit and pension costs were rising steeply on a *company-wide* basis; and (4) evidence suggesting that the plant closure prevented 369 employees at the San Antonio plant with less than five years of service from becoming "fully vested." The Plaintiffs contend that, from this evidence, it is reasonable to infer that the San Antonio plant was closed for the purpose of interfering with their ERISA benefits.

Under a straightforward application of the principles set forth in *Celotex,* the district court was correct in entering summary judgment in favor of Levi Strauss on the Plaintiffs' section 510

---

[7]The 807 Program is a federal program that encourages companies to manufacture and assemble products in facilities located in certain countries. Under the 807 Program, Levi Strauss garments are cut at facilities in the United States and exported to locations in the Caribbean basin for sewing and assembly by outside contractors, and then imported back into the United States pursuant to item 807 of the United States tariff schedules.

claim. As Levi Strauss correctly notes, while the Plaintiffs are entitled to have reasonable inferences drawn in their favor, the inferences to be drawn "must be rational and reasonable, not idle, speculative, or conjectural." *Richoux v. Armstrong Cork Corp.,* 777 F.2d 296, 297 (5th Cir.1985). To infer that Levi Strauss intended to interfere with the Plaintiffs' entitlement to ERISA benefits from the evidence proffered by the Plaintiffs in support of their claim would, in our view, be speculative.

We first consider the evidence that Levi Strauss closed the San Antonio plant to cut costs and the evidence that pension and benefit costs were rising on a company-wide basis. The problem with this evidence is that it is too general. The Plaintiffs' have pointed to no evidence suggesting that Levi Strauss closed the San Antonio plant because of high *pension and benefit* costs at that plant. Moreover, the Plaintiffs have failed to offer any evidence suggesting that pension and benefit costs *at the San Antonio* plant were steadily increasing. Indeed, the only evidence offered by the Plaintiffs that was specific to the San Antonio plant indicated that lost time claims at the plant had decreased between 1986 and 1987. In an era when benefits costs are ever increasing, if mere evidence of company-wide cost increases in ERISA benefits supported an inference that a plant was closed with specific intent to violate ERISA, every plant closure could be challenged under ERISA section 510, and such claims would be immune to summary judgment.

We next consider the evidence suggesting that the plant closure prevented 369 employees (out of approximately 1100 employees) with less than five years of service from becoming fully vested in Levi Strauss' benefits plan. Again, this evidence is too general and does not reasonably support an inference that Levi Strauss closed the San Antonio plant with the specific intent to violate ERISA. After all, the Plaintiffs pointed to no evidence suggesting that there were *more* employees at the San Antonio plant who were not fully vested in the pension plan than at other Levi Strauss plants. Moreover, this court has specifically stated that "where the only evidence that an employer specifically intended to violate ERISA is the employee's lost opportunity to accrue additional benefits, the employee has not put forth evidence sufficient to separate that intent from the myriad of other possible reasons for which an employer might have discharged him." *Clark v. Resistoflex,* 854 F.2d at 771.

Finally, we consider the evidence that Levi Strauss decided to close the San Antonio plant rather than to cut back on the 807 Program in the Caribbean.  We conclude that this evidence is insufficient to support an inference that Levi Strauss specifically intended to violate ERISA when it closed the San Antonio plant.  As we have already noted, *see supra* note 7, the 807 Program is a federally authorized program that encourages companies to manufacture and assemble products in facilities located in certain foreign countries.  Whatever the merits or demerits of the 807 Program may be, if an employer's decision to take advantage of this program were allowed to constitute evidence of a specific intent to violate ERISA, the purpose of the program would, in our view, be seriously undermined.  Accordingly, we refuse to make the leap that Levi Strauss, by doing something that it was authorized, and even encouraged, to do by the federal government, demonstrated per se a specific intent to violate ERISA.

## III. CONCLUSION

We conclude that the district court correctly granted summary judgment in favor of Levi Strauss on the Plaintiffs' article 8307c claim and their ERISA section 510 claim.  Under a plain meaning interpretation of article 8307c, the Plaintiffs have failed make any showing that the San Antonio plant closing somehow discriminated against them because of their workers' compensation activities.  And, with regard to their claim under section 510 of ERISA, the Plaintiffs have not raised a genuine issue of material fact on the question whether Levi Strauss closed the plant for the purpose of interfering with their pension benefits.  The district court's judgment is therefore AFFIRMED in its entirety.