Loyce ARMSTRONG, Appellant,

v.

NORRIS CYLINDER COMPANY,
Appellee.

No. 06–95–00084–CV.

Court of Appeals of Texas,
Texarkana.

Submitted Jan. 17, 1996.

Decided Feb. 14, 1996.

Rehearing Overruled April 30, 1996.

Robert D. Bennett, Griffith & Bennett, Gilmer, for appellant.

Loren B. Smith, Roberts, Hill, & Calk, Longview, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

OPINION

CORNELIUS, Chief Justice.

Loyce Armstrong appeals from a summary judgment rendered against him in his wrongful termination suit against Norris Cylinder Company under TEX.REV.CIV.STAT.ANN. art. 8307c.[1] Norris moved for summary judg-

1. Act of April 22, 1971, 62nd Leg., ch. 115, § 1, 1971 Tex.Gen.Laws 884, *repealed by* Act of May 12, 1993, 73rd Leg., ch. 269, § 5(1), 1993 Tex.

ment and supported its motion with affidavits and deposition testimony showing that Armstrong was laid off because of the nondiscriminatory enforcement of two written policies it adopted to reduce its general work force. Armstrong did not controvert the summary judgment evidence, but responded by arguing that because eighteen of the twenty-two persons affected by a 1991 layoff had previously filed workers' compensation claims, that fact alone constituted some evidence raising a fact issue on the question of his retaliatory discharge, thus making summary judgment improper. We reject that contention and affirm the summary judgment.

 Norris, as movant for summary judgment, had the burden to show by uncontradicted or conclusive summary judgment evidence that no genuine issue of fact existed on at least one essential element of Armstrong's cause of action, and that it was entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546 (Tex.1985).

Armstrong began working for Norris in April of 1989. In November of that year, he injured his finger and filed a workers' compensation claim. He received medical payments, but continued to work.

According to the undisputed summary judgment evidence, Norris decided in September of 1991 to reduce its work force because of a projected drop in sales. The company developed a staffing plan for each of its departments on the basis of its sales projections and established a new staffing level for each department. It prepared a written force reduction plan, and on September 30, 1991, implemented the plan by laying off twenty-two employees, including Armstrong. Armstrong continued to work for Norris on a part-time basis until September 29, 1992, when he was permanently terminated under the company's "one-year" rule. That rule was contained in a written policy providing that an employee would be terminated if he had been laid off for one year and had not been reinstated to a full-time job.

Norris's summary judgment evidence included affidavits by Louis Patterson, its human resources manager, and Kyle Kirk, its plant manager. Patterson and Kirk stated in their affidavits that Armstrong's layoff in 1991 was based solely on the general reduction in force required by projected lower sales in the future; that projected sales data indicated a reduction of sales; that on the basis of the projected sales figures, a numerical staffing requirement was established for each department in the plant; that the reduction in force in 1991 was based on the projected need in each department; that the determination of which employees would be affected by the reduction in force was based entirely on the seniority and qualifications of the employees in each job or department; that employees with the least seniority in each job, who were not qualified to perform any other job in the plant currently held by an employee with less seniority, were affected by the layoff; that the reduction in force was conducted in accordance with Norris's written policy then in effect; that a copy of the policy was attached to the affidavit; that no consideration was given to workers' compensation claims in determining who would be laid off in 1991 or 1992; that the workers' compensation claim filed by Armstrong in 1989 was neither considered nor involved in any manner in determining that he would be laid off in 1991 and terminated in 1992; and that Armstrong's 1992 termination was based solely on the company's written one-year termination rule.

Although Patterson and Kirk were interested witnesses, their affidavits were clear, positive, direct, otherwise credible, and free from contradictions and inconsistencies, and thus met the requirements of TEX.R.CIV.P. 166a(c). *See Texas Division–Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, 313 (Tex.1994). Armstrong did not file controverting affidavits or produce any other controverting summary judgment evidence. Instead, he filed a response in which he argued that statistics showing that eighteen of the twenty-two persons laid off in 1991 had filed workers' compensation claims in the past raised a fact issue whether such claims were considered in

Gen.Laws 1273 (current version found at TEX.LAB. CODE ANN. § 451.001 (Vernon 1996)).

deciding which employees would be terminated.

Armstrong also contended in his response that Norris had continued to use temporary employees the year following the 1991 layoffs and that this raised a question of fact as to whether layoffs had been based solely on a forecasted downturn in sales and production.

■ In addition, Armstrong argued in his response that Patterson's deposition showed that he could not produce a document he allegedly used in deciding how the layoffs were to be made. Armstrong contends that if the document was intentionally destroyed, rather than lost in the course of business, the concept of spoliation would raise a presumption that the document contained materials harmful to Norris; and if the document was only lost, a question of fact existed as to the truth of the stated basis for the layoffs, citing *H.E. Butt Grocery Co. v. Bruner,* 530 S.W.2d 340, 344 (Tex.Civ.App.—Waco 1975, writ dism'd w.o.j.). The document Armstrong refers to appears to be a "master sheet" that lists the names of employees who might be affected by the reduction in force. The sheet contained each employee's name, department number, shift assignment, and current job. There was also a space where an employee could list other jobs for which he believed he could qualify if he was laid off.

There is nothing to indicate that this master sheet provided any guidance as to how the employee reduction was to be accomplished. In fact, those instructions were contained in the company's written policies mentioned above. We conclude that the absence of the master sheet did not raise a fact issue as to the motive for Armstrong's termination.

■ Armstrong's principal contention is that the statistical evidence alone constitutes some evidence that his individual layoff was discriminatory. We cannot accept that proposition. As the court said in *Parham v. Carrier Corp.,* 9 F.3d 383, 388 (5th Cir.1993):

> A pattern of firing employees who have filed compensation claims could be probative of retaliatory discharge, but not when all the employees have been discharged pursuant to the same ... policy. Here,

the pattern reflects application of the policy, not some invidious retaliatory motive.

Moreover, Norris's 1991 general layoff affected several employees who had not filed workers' compensation claims. That fact would also seem to deprive the general layoff of any discriminatory or retaliatory character. *See Unida v. Levi Strauss & Co.,* 986 F.2d 970 (5th Cir.1993).

■ Armstrong did not produce any summary judgment evidence that Norris terminated him or any other employee because of workers' compensation filings. In fact, Armstrong testified in his deposition that he did not know of any reason for his own layoff. A subjective belief that a worker was terminated because he had filed a workers' compensation claim is not sufficient to raise a fact issue precluding summary judgment. *Texas Division–Tranter, Inc. v. Carrozza, supra.*

■ There is another basis for affirming the summary judgment. The uncontroverted summary judgment evidence shows that Armstrong was laid off on September 30, 1991. He filed his suit on September 28, 1994, more than two years later. A claim for retaliatory discharge under Article 8307c is governed by the general two-year statute of limitations. *Almazan v. United Serv. Auto. Ass'n,* 840 S.W.2d 776 (Tex.App.—San Antonio 1992, writ denied). Norris pleaded limitations and included it as a ground in its summary judgment motion. Thus, Armstrong's claim for his 1991 layoff is barred by limitations, and there is no summary judgment evidence raising an inference that the 1992 termination was caused by anything other than the uniform, nondiscriminatory operation of the company's one-year policy.

For all the reasons stated, the judgment is affirmed.