# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-20817

United States Court of Appeals
Fifth Circuit

**FILED**
November 22, 2019

Lyle W. Cayce
Clerk

NIKESH SHAH,

     Plaintiff - Appellant

v.

CHEVRON USA, INCORPORATED,

     Defendant - Appellee

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:17-CV-1465

---

Before CLEMENT, ELROD, and DUNCAN, Circuit Judges.

PER CURIAM:*

     Nikesh Shah sued his former employer, Chevron USA, Inc., under § 510 of ERISA, which prohibits an employer from firing an employee to prevent him from receiving benefits under an ERISA-governed benefit plan. Shah alleges that Chevron fired him to prevent him from receiving a severance package and soon-to-vest retirement benefits. Chevron responds that it fired Shah because of his poor performance.

---

     * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-20817

The district court granted Chevron's motion for summary judgment. It held that Shah had not produced sufficient evidence to show that Chevron fired him to prevent him from receiving pension or severance benefits rather than for his poor performance. We AFFIRM the district court's judgment.

## I

Shah began working for Chevron as an "Oils Planning Analyst" on April 17, 2012. He enrolled in the Chevron Retirement Plan, which would give him vested retirement benefits after five years of employment.

In early 2015, Chevron made Shah a "Crude Exposure Analyst" and moved him to a team supervised by Barbara Harrison.  His new position had a salary level of "Pay Scale Grade 23." In March 2016, Shah received his first annual performance evaluation in the new position. Harrison noted that Shah's "[p]erformance was below expectation of a PSG 23 employee in the areas of independent work and analytical methodology," and that Shah needed to improve "proactive communication" and "analytical depth." Harrison also gave Shah informal feedback in emails and in person about similar performance deficiencies throughout 2015 and 2016. She also discussed her concerns with her supervisors.

On August 3, 2016, Chevron announced job cutbacks as part of the "Project Delta" cost-reduction program. Harrison and her supervisor, Chris Yates, were involved in proposing organizational changes to reduce the number of employees in the department where Shah worked. They attended meetings to discuss the reorganization throughout the remainder of the year.

On August 4, 2016, Harrison submitted Shah's next scheduled, formal performance review. She noted that Shah continued to "rely heavily . . . on others to assist and guide [his] data analysis versus demonstrating ownership and mastery of the process." She again noted his deficiencies in "level of independent work product" and "depth of analysis." Harrison reported that

Shah required more assistance "to ensure clarity of message, data quality and formatting" in his work product than she "expect[ed] for a PSG 23 employee." At that salary level, Harrison expected Shah to complete his work "quickly with minimal assistance."

In August or September, Harrison discussed Shah's performance issues with Human Resources Advisor Michelle Cochran for the first time. They discussed placing Shah on a "Performance Improvement Plan" to see whether he could improve his work to an acceptable level. Harrison again discussed Shah's performance with Yates, and then decided to put Shah on an improvement plan. She met with Shah in early November and explained that his failure to improve in the next three months as outlined in the plan could result in his termination.

By December 2016, Chevron had decided to eliminate Shah's position of Crude Exposure Analyst as part of the department reorganization. But the decision was not announced publicly, and Shah was not notified at that time. Harrison continued to meet with Shah about once every two weeks during the improvement-plan period to discuss his performance. In January 2017, Harrison decided that Shah's performance had not improved and that he should be terminated. On February 2, Harrison and Yates exchanged emails about the decision to fire Shah, and then formally memorialized the decision in an email exchange with Cochran and Yates's supervisor on February 7. Harrison met with Shah on February 13, 2017, and terminated his employment.

The following day, Chevron notified some employees in the department where Shah had worked that their positions were being eliminated as part of Project Delta. The Crude Exposure Analyst was one of those positions. Effective February 15, 2017, employees whose positions were eliminated as

No. 18-20817

part of Project Delta could be eligible for severance pay under an ERISA plan if Chevron did not transfer them to another position.

A few months later, Shah sued Chevron, alleging that it fired him to prevent him from receiving three benefits in violation of ERISA § 510 and Texas quantum meruit principles: "a five-year vesting benefit, a severance package, and a non-discretionary bonus." After discovery, Chevron moved for summary judgment. The district court concluded that Shah had failed to provide sufficient evidence to support either claim and granted summary judgment to Chevron. On appeal, Shah has abandoned the quantum meruit claim and any argument about bonuses. He now argues only that the district court erred in granting summary judgment to Chevron on his ERISA claim for the retirement plan and severance pay.

## II

This court reviews a grant of summary judgment de novo, applying the same standard as the district court. *Unida v. Levi Strauss & Co.*, 986 F.2d 970, 975 (5th Cir. 1993). If Shah has "fail[ed] to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial," then no genuine dispute of material fact exists, and Chevron is entitled to summary judgment. *Id.* at 975–76 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## III

Under § 510 of ERISA, an employer may not "discharge . . . a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under" an ERISA-governed benefit plan. 29 U.S.C. § 1140.

To succeed on his § 510 claim, Shah must first "establish a prima facie case that [Chevron] fired him with a specific discriminatory intent" to prevent him from receiving ERISA benefits. *Stafford v. True Temper Sports*, 123 F.3d

No. 18-20817

291, 295 (5th Cir. 1997). He "need not prove that the discriminatory reason was the only reason for discharge, but he must show that the loss of benefits was more than an incidental loss from his discharge." *Id.* "To dispel the inference of discrimination which would arise from a prima facie case, [Chevron] must articulate a non-discriminatory reason for its actions, and then the burden shifts to [Shah] to prove this reason is a pretext and the real purpose was denial of ERISA benefits." *Id.*

Assuming that Shah established a prima facie case, he does not contest the district court's conclusion that Chevron satisfied its burden of going forward with evidence of a legitimate, non-discriminatory reason for firing him—poor job performance. *See Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 320 (5th Cir. 1997) (relying on poor job performance as a legitimate, non-discriminatory reason for termination). The dispositive question, then, is whether the record contains sufficient evidence to create a genuine factual dispute about whether Chevron's proffered reason for firing Shah is pretextual. We conclude that the record does not.

**A**

Shah's primary argument about pretext focuses on chronology: Harrison fired him just two days before he could have been eligible for the Project Delta severance plan and two months before his retirement benefits would have vested. But chronology undermines Shah's argument: Harrison testified that she learned about the five-year vesting requirement only after Shah filed this lawsuit.[1] If she didn't know about the vesting requirement and Shah's vesting date, she couldn't have fired Shah with the specific intent to prevent his retirement benefits from vesting. Furthermore, the record contains no evidence

---

[1] Harrison did not learn about the five-year vesting requirement when she was hired because Chevron had not yet implemented it.

that the pension or severance benefits would have been paid from the budget in Harrison's department or, if they would have, that Harrison knew this. In fact, Harrison testified that she did *not* know the source of the retirement funds.[2] Unless Harrison knew that benefits payments would come out of her budget, she would have no reason to fire Shah with the specific intent to avoid paying Shah those benefits. Unless Shah can point to other evidence that could convince a reasonable jury that Harrison was not telling the truth, he cannot prevail on his claim.

Shah attempts to meet that burden with more chronology: Harrison criticized Shah's work in his August 2016 performance review just one day after Project Delta was announced, and Harrison discussed his job performance with HR for the first time shortly thereafter. But, again, the chronology refutes Shah's claim. Harrison began criticizing Shah's job performance no later than March 2016, months before she knew about Project Delta. And her critiques after Project Delta was announced mirror her earlier ones. After explaining in March that Shah should improve the quality and depth of his analysis, Harrison found in August that he had not improved and still required more coaching than she expected of an employee at his salary level. Harrison's first conversation with Cochran in HR then followed closely on the heels of the second negative review.

Shah also points out that Harrison continued to meet with him regarding his improvement plan well after she knew that his position was being eliminated. Unless Harrison was trying to fabricate a reason to fire him, Shah argues, there would be no reason to keep him in the dark and continue the improvement plan. But nothing about Harrison's behavior is inconsistent with

---

[2] Cochran likewise testified that she did not know whether vested retirement benefits or severance packages would be paid from the department's budget.

firing Shah for poor job performance. Chevron did not publicly announce which positions it would eliminate until February 2017. Nothing was withheld from Shah specifically. And the fact that Harrison knew that Chevron would eliminate Shah's position does not mean that she had already decided to fire him. If he performed well on the improvement plan, Harrison could have recommended that he be moved to a different position when his current one was eliminated.

Furthermore, if Harrison thought Shah's performance might justify termination, placing Shah on an improvement plan would be an important part of testing her suspicions. This kind of deliberative process is precisely what one would expect a responsible employer to go through before deciding whether to fire or relocate an employee. Relying on the improvement plan as evidence that Chevron's proffered motive was a mere pretext would be perverse.

**B**

Shah next attempts to bolster his chronology evidence by comparing his performance with his predecessor's. The prior Crude Exposure Analyst received a lower numerical score than Shah on his performance evaluation, but he was moved to a different position rather than fired. The comparison, however, is inapt because Shah and his predecessor are not similarly situated for purposes of comparing their performance and Harrison's personnel decisions.

Shah's predecessor was the first person to fill the Crude Exposure Analyst position. His background was in information technology. When Harrison discovered that he lacked the necessary analytical skills to be a Crude Exposure Analyst, she recommended that he be reassigned to another job where his demonstrated IT skills would be more valuable. In looking for a replacement, Harrison consciously decided to increase the expectations of the employee in that role and tried to hire someone who could work independently

with little oversight. She also decided to raise the salary grade for the position to reflect her higher expectations. Harrison later tied many of her critiques of Shah's performance to his failure to show the degree of proactivity and depth of analysis that she expected of an employee at his salary level.

The record shows that Chevron had decided that the job demanded more advanced abilities and would be rewarded with higher pay. When Shah failed to achieve the higher level of performance he was hired and compensated for, Harrison fired him.[3]

\* \* \*

Shah has not provided sufficient evidence to show that Chevron used his job performance as a pretext for firing him to avoid paying severance and retirement benefits. We thus AFFIRM the district court's judgment.

---

[3] Shah's accusations that Harrison knowingly put a false statement in his improvement plan and that Yates admitted to fabricating a paper trail to justify Shah's termination are meritless and misrepresent the evidence in the record.