# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-20694

United States Court of Appeals
Fifth Circuit

**FILED**
July 9, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

BEKIR BULUC, also known as Celebi Buluc, also known as Bekir Celibi,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before CLEMENT, DUNCAN, and OLDHAM, Circuit Judges.

STUART KYLE DUNCAN, Circuit Judge:

A jury convicted Turkish national Bekir Buluc under 8 U.S.C. § 1253(a)(1)(C) for "tak[ing] . . . action" that was "designed to prevent or hamper" his removal from the United States. While immigration officers were escorting Buluc onto a commercial flight to Turkey, Buluc announced he would not board the plane and vigorously resisted the officers' attempts to carry him aboard. Airline personnel, witnessing the fracas, barred Buluc's boarding. At trial, Buluc claimed that the subsection under which he was prosecuted requires "joint" action. Invoking the canons of construction *ejusdem generis* and *noscitur a sociis*, Buluc argued that the meaning of "takes action" in § 1253(a)(1)(C) is colored by the nearby verbs "connives" and "conspires," which

No. 17-20694

connote joint action. *Id.* (penalizing an alien who "connives or conspires, or takes any other action, designed to prevent or hamper . . . [his] departure pursuant to [a final order of removal]"). Buluc therefore moved for acquittal because there was no evidence that he acted with anyone else to prevent his removal. Buluc also objected on Confrontation Clause grounds to the officers' testimony that airline personnel denied him boarding after witnessing his tantrum. The district court disagreed with Buluc on both points.

On appeal, Buluc again wheels out the statutory canons to cabin the phrase "takes any other action" to joint action. We are unpersuaded. The relevant phrase—"connives or conspires, or takes any other action"—contains none of the contextual fuses that trigger those canons. Instead, the phrase's structure conveys that "takes any other action" has independent meaning, which easily encompasses Buluc's solo efforts to thwart his removal. We also disagree with Buluc's Confrontation Clause arguments. The officers' testimony that airline personnel denied Buluc boarding did not implicate the Confrontation Clause. Even if it did, any error was harmless. We affirm.

I.

Pursuant to a final order of removal, the United States attempted to deport Buluc via a commercial flight to Turkey on October 4, 2016. Since Buluc had "caused problems" during his four previous removals, Immigration and Customs Enforcement ("ICE") arranged for extra help. Several ICE officers, including Richard Rawls ("Officer Rawls") and Michael Nugent ("Officer Nugent"), escorted Buluc to the Bush Intercontinental Airport in Houston, Texas. En route, Buluc warned officers that he intended to resist. He told them: "I am not going to get on that flight." He also stated: "You can't use force putting me on a commercial flight. You are going to have to put me on a charter flight because there you can use force."

2

No. 17-20694

To avoid a scene in the airport, ICE arranged for a Houston police officer to meet them on the tarmac and board Buluc plane-side. But once they arrived, Buluc refused to exit the vehicle, again stating that he did not want to go. Officers then pulled Buluc from the vehicle, put him on the ground, and searched him. Then they tried to carry a still-intransigent Buluc to the plane. Buluc "remained rigid" until the officers approached the plane's stairs. He then "started kicking and physically resisting" and "violently pik[ing] and mov[ing] about to where it was difficult to continue to carry him," and so the officers put him down.

In light of this commotion, Turkish Airlines refused to board Buluc. An airline representative, Mr. Ozel, observed the "ruckus" and denied Buluc boarding. After Buluc realized the airline would not permit him to board, he stopped resisting and walked back to the vehicle. The officers then returned him to the detention center.

The government charged Buluc with preventing his departure under Subsection (C) of 8 U.S.C. § 1253(a)(1) ("Subsection (C)"), which penalizes "[a]ny alien" who "connives or conspires, or takes any other action, designed to prevent or hamper or with the purpose of preventing or hampering the alien's departure pursuant to [a final order of removal]." Following the government's case at trial, Buluc moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29. He argued that the trial evidence fatally varied the charges in the indictment, because Subsection (C) requires proof of a "joint act" to prevent an alien's departure, and the government had not proved that. Buluc's attorney argued, "You can't conspire alone or with a government agent. The government must prove that he connived, conspired or took some other similar action. And I don't think they have proven any of that." The district judge denied the motion, however, reasoning that the pertinent statutory terms—"connives or conspires, or takes any other action"—are phrased

3

disjunctively, and that the government had presented sufficient evidence that Buluc "took action" to prevent his departure.

Buluc also challenged on Confrontation Clause grounds statements introduced by the prosecution that Buluc was denied boarding by the airline representative. Buluc objected to the prosecutor's opening statement that the jury would hear about the airline's refusal to let Buluc board because "[t]hat's not what they want the customers to see." Buluc also objected to testimony from Officers Rawls and Nugent. Specifically, Rawls testified that the airline "denied his boarding," and Nugent similarly testified that "[w]e were denied boarding." Buluc timely objected on Confrontation Clause grounds, and the judge permitted Buluc to enter an ongoing objection. Ultimately, the court overruled Buluc's objections, concluding the officers had testified about "whether or not they were allowed to put him on the airplane," and not "what was said" by the airline representative.

Buluc rested without presenting a case. The jury found him guilty, and the judge sentenced him to 46 months imprisonment and one year supervised release. Buluc now appeals the district court's denial of his acquittal motion and its Confrontation Clause ruling.

## II.

We review *de novo* a district court's denial of a motion for judgment of acquittal under Rule 29. *United States v. Campbell*, 52 F.3d 521, 522 (5th Cir. 1995) (per curiam). In doing so, we ask "whether a reasonable jury could conclude that the evidence presented, viewed in the light most favorable to the government, established the defendant's guilt beyond a reasonable doubt." *United States v. Duncan*, 164 F.3d 239, 242 (5th Cir. 1999). The district court's decision on the motion is accorded no deference. *Id.* Additionally, whether introduction of testimony violated the Confrontation Clause is reviewed *de novo*, "subject to a harmless error analysis." *United States v. Polidore*, 690 F.3d

No. 17-20694

705, 710 (5th Cir. 2012). "Harmless error means that there is [no] reasonable possibility that the evidence complained of might have contributed to the conviction." *United States v. Kizzee*, 877 F.3d 650, 661 (5th Cir. 2017) (alteration in original) (internal quotation marks omitted).

### III.

### A.

Appealing the denial of his acquittal motion, Buluc argues the district court misconstrued 8 U.S.C. § 1253(a)(1)(C) by failing to recognize that it requires "joint action." In several unpublished opinions, we have affirmed the evidentiary sufficiency of convictions under Subsection (C) that do not involve joint action, albeit without addressing the interpretive arguments Buluc raises.[1] We now make explicit what was implicit in those non-precedential decisions: A defendant may be convicted of "taking . . . action" to "prevent or hamper" his deportation under Subsection (C) without any proof that he acted in concert with someone else.

Subsection (C) appears within this broader context:

---

[1] *See United States v. Ngay*, 708 F. App'x 192, 193 (5th Cir. 2018) (per curiam) (affirming Subsection (C) conviction where alien being deported "unequivocally declared to the deportation officer . . . that he would not go[,]" "physically resisted the deportation officers' efforts" to take him through security "by stiffening his legs to avoid moving forward" and by "jerking his arms and thrashing about to escape the officers' hold"); *United States v. Nzamubereka*, 666 F. App'x 327, 327–28 (5th Cir. 2016) (per curiam) (affirming where defendant "refused to sign a transit visa application necessary to remove him to Rwanda"); *United States v. Sat*, 572 F. App'x 278, 279 (5th Cir. 2014) (per curiam) (affirming where defendant "refus[ed] . . . to board a flight to India" on designated departure date); *United States v. Diallo*, 569 F. App'x 221, 222 (5th Cir. 2014) (per curiam) (finding defendant "connived or took other actions designed to prevent or hamper . . . his removal" by "becoming disruptive and physically resisting the immigration enforcement agents when they attempted to escort him onto commercial flights bound for the Central African Republic").

**(a) Penalty for failure to depart**

**(1)  In general**

Any alien against whom a final order of removal is outstanding by reason of being a member of any of the classes described in section 1227(a) of this title, who—

**(A)**  willfully fails or refuses to depart from the United States within a period of 90 days from the date of the final order of removal under administrative processes, or if judicial review is had, then from the date of the final order of the court,

**(B)**  willfully fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure,

**(C)**  *connives or conspires, or takes any other action, designed to prevent or hamper or with the purpose of preventing or hampering the alien's departure pursuant to such,*  or

**(D)**  willfully fails or refuses to present himself or herself for removal at the time and place required by the Attorney General pursuant to such order,

shall be fined under Title 18, or imprisoned not more than four years (or 10 years if the alien is a member of any of the classes described in paragraph (1)(E), (2), (3), or (4) of section 1227(a) of this title), or both.

8 U.S.C. § 1253(a)(1) (emphasis added). On appeal, Buluc argues that the district court failed to apply two canons of construction—*ejusdem generis* and *noscitur a sociis*—to the Subsection (C) phrase "takes any other action." Buluc maintains the phrase must be limited by the nearby verbs "connives or conspires" to require joint or concerted action with another. Because there was no such evidence—the evidence shows Buluc acted alone—Buluc asserts the district court erred by denying his acquittal motion. For its part, the district court disagreed that Subsection (C) requires a joint act. "It seems to me[,]" the court stated, "the way I read the statute is that he either connived or conspired or took any other action. Those are disjunctive, and so I think that [Buluc] took

action to prevent his deportation." The government relies on the district court's reasoning on appeal. We agree with the district court and the government that the cited canons do not require Buluc's "joint-action" interpretation of "takes any other action."

First, the contextual canon *ejusdem generis* does not help Buluc. *Ejusdem generis* ("of the same kind") describes the "principle that 'when a general term follows a specific one, the general term should be understood as a reference to subjects akin to the one with specific enumeration.'" *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 223 (2008) (quoting *Norfolk & W. R. Co. v. Train Dispatchers*, 499 U.S. 117, 129 (1991))[2]; *see also generally* ANTONIN SCALIA & BRYAN GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS (2012), 199 ("SCALIA & GARNER") (*ejusdem generis* signifies "[w]here general words follow an enumeration of two or more things, they apply only to persons or things of the same general kind or class specifically mentioned"). Buluc argues this canon limits the general phrase "takes any other action" to jointly undertaken acts because it follows the specific terms "connives or conspires," both of which require joint actions. *See* BLACK'S LAW DICTIONARY at 375 (10th ed. 2014) (defining "conspiracy" as an "agreement by two or more persons to commit an unlawful act"); *id.* at 366 (defining "connive" as "knowingly overlook[ing] another's wrongdoing"). We disagree.

---

[2] *See also, e.g., Reed v. Taylor*, 923 F.3d 411, 416 (5th Cir. 2019) (quoting *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114–15 (2001) & 2A N. SINGER, SUTHERLAND ON STATUTES AND STATUTORY CONSTRUCTION § 47.17 (1991)) ("[T]he *ejusdem generis* canon" means "'[w]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words'"); *United States v. Kaluza*, 780 F.3d 647, 660–61 (5th Cir. 2015) (quoting *Garcia v. United States*, 469 U.S. 70, 74 (1984)) (explaining "[u]nder the principle of *ejusdem generis*, 'where general words follow an enumeration of specific terms, the general words are read to apply only to other items like those specifically enumerated'").

No. 17-20694

Subsection (C) lacks the basic premise for applying *ejusdem generis*—a list of specific terms followed by a catchall generic term or terms. *See, e.g., Circuit City Stores*, 532 U.S. at 114 (canon applies "[w]here general words follow specific words in a statutory enumeration") (alteration in original); *see also* SCALIA & GARNER at 200 (charting canon's application to "syntactic constructions that have particularized lists followed by a broad, generic phrase" and collecting decisions). For example, in one decision the Supreme Court applied the canon to the list "execution, levy, attachment, garnishment, or other legal process," and concluded that the catchall "'other legal process' was limited to legal processes of the same nature as the specific items listed." *Ali*, 552 U.S. at 224 (discussing *Wash. State Dep't of Soc. and Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 375, 384–85 (2003)); *see also Reed*, 923 F.3d at 416 (discussing *Keffeler*'s application of *ejusdem generis*). Similarly, in another case the Supreme Court applied the canon to the enumeration "contracts of employment of seamen, railroad employees, or any other class of workers engaged in . . . commerce," and concluded that the residual clause ("any other class of workers") was limited "by reference to the enumerated categories of workers which are recited just before it." *Circuit City Stores*, 532 U.S. at 112, 114–15. Thus *ejusdem generis* relies on the "familiar semantic structure" in which an enumeration of specific terms imparts a restrictive meaning to a generic "follow-on phrase." *Reed*, 923 F.3d at 416. That signature structure justifies the "inference embodied in *ejusdem generis* that Congress remained focused on the common attribute [of the specific terms] when it used the catchall phrase." *Ali*, 552 U.S. at 225.

Subsection (C) is not structured that way. To the contrary, it has a distinct structure that *repels* application of *ejusdem generis*. As the Supreme Court has explained, *ejusdem generis* does not apply when the relevant "phrase is disjunctive, with one specific and one general category, not . . . a list

8

of specific items separated by commas and followed by a general or collective term." *Id.* Thus, in *Ali* the Supreme Court declined to apply the canon to the phrase "any officer of customs or excise or any other law enforcement officer." *Id.* The phrase did not present the *ejusdem generis* trademark of a list of specifics followed by a "'general or collective term.'" *Id.* (quoting *United States v. Aguilar*, 515 U.S. 593, 615 (1995) (Scalia, J., concurring in part and dissenting in part)). Instead, it featured the "disjunctive" pairing of "one specific [category]" ("any officer of customs or excise") and "one general category" ("any other law enforcement officer").

So too here. The verbs in Subsection (C)—"connives or conspires, or takes any other action"—are not structured grammatically as a list of specifics followed by a generic catchall. *See, e.g.,* SCALIA & GARNER at 197 (explaining that a list is "usually a parallel series of nouns and noun phrases, or verbs and verb phrases"). Instead, the subsection disjunctively places one category of verbs ("connives or conspires") alongside a second category ("takes any other action"). Like the three nouns in *Ali*, the verbs' grouping as distinct categories signals contextually that they have independent meaning.[3] The punctuation of Subsection (C) underscores this point: "connives or conspires" is cordoned off from "takes any other action" by a conspicuous set of commas. *See* 8 U.S.C. § 1253(a)(1)(C) (penalizing an alien who, *inter alia*, "*connives or conspires, or*

---

[3] *See, e.g., United States v. Turkette*, 452 U.S. 576, 582 (1981) (determining *ejusdem generis* inapplicable where a statute listed two categories, one of which was not "merely a more general description of the first"); *United States v. EME Homer City Generation, L.P.*, 727 F.3d 274, 293 (3rd Cir. 2013) (citing *Ali*, 552 U.S. at 226; *Watt v. W. Nuclear, Inc.*, 462 U.S. 36, 44 n.5 (1983) (explaining that "[s]ome statutes use a general phrase not as a residual category intended to be a more general description of the preceding terms, but instead use each of the terms, including the general phrase, as independent and unrelated statutory categories")); *cf. United States v. Lauderdale Cty.*, 914 F.3d 960, 967 (5th Cir. 2019) (concluding that the clause "'conduct by law enforcement officers or by officials or employees of any governmental agency' does not contain a string of terms; rather, it contains two independent clauses separated by a disjunctive 'or'").

No. 17-20694

*takes any other action,* designed to prevent or hamper" his removal) (emphasis added); *see also, e.g., U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.,* 508 U.S. 439, 454 (1993) (observing that "the meaning of a statute will typically heed the commands of its punctuation"); *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241 (1989) (relying on "grammatical structure" to interpret a statute and reasoning that a phrase "set aside by commas . . . stands independent of the language that follows"); SCALIA & GARNER at 161 (stating that "[n]o intelligent construction of a text can ignore its punctuation"). Consequently, we conclude that the *ejusdem generis* canon fails to support Buluc's reading of Subsection (C).

Second, the related contextual canon *noscitur a sociis* also does not help Buluc. *Noscitur a sociis* ("it is known by its associates") applies "'when a string of statutory terms raises the implication that the words grouped in a list should be given related meaning.'" *Lauderdale Cty.,* 914 F.3d at 967 (quoting *S.D. Warren Co. v. Me. Bd. of Envtl. Prot.,* 547 U.S. 370, 378 (2006)); *see* SCALIA & GARNER at 195 (quoting *Third Nat'l Bank in Nashville v. Impac Ltd.,* 432 U.S. 312, 322 (1977)) (explaining the canon "especially holds that 'words grouped in a list should be given related meanings'"). Here the operative phrase in Subsection (C) lacks the "string of statutory terms" necessary to invoke the canon. For instance, in *Lauderdale County,* we declined to apply *noscitur a sociis* to the phrase "conduct by law enforcement officers or by officials or employees of any governmental agency," reasoning the phrase "does not contain a string of terms" but "rather . . . contains two independent clauses separated by a disjunctive 'or.'" 914 F.3d at 967; *see also, e.g., S.D. Warren Co.,* 547 U.S. at 379–80 (explaining that "*noscitur a sociis* is no help absent some sort of gathering with a common feature to extrapolate"); SCALIA & GARNER at 196 (explaining that "[f]or the associated-words canon to apply, the terms must be conjoined in such a way as to indicate that they have some quality in

10

common"). That principle defeats application of the canon here: As we have explained, Subsection (C) features, not a list of verbs with common features, but two grammatically distinct categories of verbs ("connives or conspires" and "takes any other action") separated by a disjunctive. We therefore decline to apply *noscitur a sociis* to "takes any other action." Doing so would unjustifiably "rob" that broad phrase "of its independent and ordinary significance." *Graham Cty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 288 (2010) (quoting *Rieter v. Sonotone Corp.*, 442 U.S. 330, 338–39 (1979) (internal marks omitted)).

In sum, we reject Buluc's arguments that the cited canons limit the Subsection (C) phrase "takes any other action" to "takes any other *joint* action." Leaving aside the fact that the contextual triggers for those canons are absent, deploying the canons as Buluc suggests would "render [the] general words [of Subsection (C)] meaningless." *Kaluza*, 780 F.3d at 661 (quoting *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 163 (2012)). Nothing in the text or surrounding context of Subsection (C) suggests that Congress meant to limit the phrase "takes any other action" to actions taken in concert with others. Congress could have easily enacted a different text conveying that meaning— for instance, "connives or conspires, or takes any other *joint* action" or "connives or conspires, or takes any other *similar* action." Instead Congress chose the broad, unqualified phrase—"takes any other action"—and fenced it off from nearby verbs by commas. We must give effect to that choice. *See, e.g., Ali*, 552 U.S. at 227–28 (declining to deploy canons to limit "the unmodified, all-encompassing phrase 'any other law enforcement officer,'" where Congress

"easily could have written" a narrower phrase); *see also* SCALIA & GARNER at 59 ("No canon of interpretation is absolute.").[4]

We therefore hold that the phrase "takes any other action" in 8 U.S.C. § 1253(a)(1)(C) is not limited to acts requiring joint or concerted action by the defendant. Because a reasonable jury could conclude that the government's evidence established Buluc's guilt under Subsection (C) beyond a reasonable doubt, we affirm the denial of Buluc's motion for judgment of acquittal.

### B.

Buluc next argues certain evidentiary rulings of the district court violated the Confrontation Clause. That clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant . . . had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004); U.S. CONST. amend. VI. Specifically, Buluc challenges the prosecution's opening statement and two officers' testimony about Turkish Airline representative Ozel's refusal to allow Buluc on the plane. During his opening statement, the prosecutor told the jury it would hear officers' testimony that Ozel refused to board Buluc. Officers Rawls and Nugent subsequently testified that Ozel denied Buluc permission to board. Rawls testified Ozel "denied his boarding." Nugent similarly testified, "We were denied boarding," and observed he was "pretty

---

[4] In his reply brief, Buluc also argues this reading of Subsection (C) renders superfluous Subsection (A), which penalizes an alien who "willfully fails or refuses to depart from the United States within a period of 90 days[.]" 8 U.S.C. § 1253(a)(1)(A); *see, e.g., Howard Hughes Co., L.L.C. v. Comm'r*, 805 F.3d 175, 183 (5th Cir. 2015) (discussing "the rule against superfluities, [which] instructs courts to interpret a statute to effectuate all its provisions, so that no part is rendered superfluous") (alteration in original) (quoting *Hibbs v. Winn*, 542 U.S. 88, 89 (2004)). "By failing to raise this argument until [his] reply brief, [Buluc] ha[s] waived it." *Unida v. Levi Strauss & Co.*, 986 F.2d 970, 976, n.4 (5th Cir. 1993). In any event, Buluc is wrong. Subsection (A) accounts for different conduct than Subsection (C): It penalizes an alien for willfully failing to leave the United States within a specific time period (90 days) after being ordered to do so.

certain" Buluc heard Ozel's denial. Buluc argues these were Confrontation Clause violations because the officers referred to Ozel's out-of-court statement to prove that Buluc was denied boarding and because Buluc had no opportunity to cross-examine Ozel. The district court overruled Buluc's objections, finding the officers' testimony did not implicate the Confrontation Clause. We agree.

The admission of an out-of-court statement triggers the Confrontation Clause only if the statement was "testimonial," meaning its "'primary purpose' . . . was to 'creat[e] an out-of-court substitute for trial testimony.'" *Ohio v. Clark*, 135 S. Ct. 2173, 2180 (2015) (quoting *Michigan v. Bryant*, 562 U.S. 344, 358 (2011)) (alteration in original). Even assuming the officers' testimony referenced Ozel's statement[5] denying Buluc boarding, that statement was not "testimonial" for Confrontation Clause purposes. Ozel's statement was made, not in response to police questioning, but instead during the heated encounter caused by Buluc's violent resistance to being boarded. Under those circumstances, we do not find the primary purpose of the statement was to create evidence to incriminate Buluc at trial. *See, e.g., id.* (citing *Bryant*, 562 U.S. at 358) (statement was non-testimonial where "the circumstances objectively indicated that the conversation was primarily aimed at quelling an ongoing emergency, not establishing evidence for the prosecution"); *United States v. Barker*, 820 F.3d 167, 170 (5th Cir. 2016) (quoting *Clark*, 135 U.S. at 2180) (in discerning whether statement was non-testimonial, court examines "factors such as 'whether an ongoing emergency exists' and 'the informality of the situation and the interrogation'"). Ozel's statement therefore fell outside the purview of the Confrontation Clause.

---

[5] That is a generous assumption. One may reasonably read the record, as the district court did, to show that the officers testified only about "whether or not they were allowed to put [Buluc] on the airplane," and not about "what was said" by the airline representative.

Alternatively, any error in admitting the officers' testimony was harmless beyond a reasonable doubt. *United States v. Jimenez*, 464 F.3d 555, 562 (5th Cir. 2006) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)). The government meets that standard by showing there was "'no reasonable possibility that the tainted evidence might have contributed to the jury's verdict of guilty.'" *United States v. Jones*, __ F.3d __, 2019 WL 2754760, at *8 (5th Cir. July 2, 2019) (quoting *Lowery v. Collins*, 988 F.2d 1364, 1373 (5th Cir. 1993)). We see no reasonable possibility here. The testimony about Ozel's refusal to board Buluc was unnecessary to prove Buluc acted to hamper his departure under Subsection (C). *See* 8 U.S.C. § 1253(a)(1)(C) (requiring that defendant only "take . . . action" to "prevent or hamper" his departure). Moreover, that testimony was tangential to the evidence establishing Buluc's guilt. The record reflects that Buluc candidly told the officers on the way to the airport that he did not intend to get on the flight. Buluc refused to get out of the vehicle once they arrived at the airport. And Buluc vigorously resisted the officers' attempts to board him, to the extent that the officers had to carry him to the plane. Even indulging the assumption that the district court erroneously admitted testimony concerning the airline's refusal to board Buluc, we discern no reasonable possibility that it contributed to Buluc's conviction.

AFFIRMED