# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 19, 2023

Lyle W. Cayce
Clerk

No. 21-50726

United States of America,

*Plaintiff—Appellee*,

*versus*

Yaritza Naranjo,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 4:20-CR-500-1

Before Richman, *Chief Judge*, and Dennis and Ho, *Circuit Judges*.
Per Curiam:[*]

Yaritza Naranjo appeals her jury-trial convictions for transportation of, and conspiracy to transport, illegal aliens, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), (v)(I).  She contends, as she did at trial by motions for judgment of acquittal, that the Government did not present sufficient evidence to prove she (1) knew of or recklessly disregarded the aliens' illegal statuses or (2) agreed with another person to transport illegal aliens.  She also

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.4.

No. 21-50726

claims a video recording and transcript of her interview with law enforcement, admitted over objection, violated her Sixth Amendment confrontation right.  Because there was sufficient evidence for the jury to find her guilty, and because the admission of the tape and transcript, even if erroneously admitted, was harmless, we affirm.

**I**

Naranjo's sufficiency of the evidence challenge is reviewed de novo.[1] When examining the sufficiency of evidence, our court must affirm a criminal conviction "if, after viewing the evidence and all reasonable inferences in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[2]  In short, the question is not whether the jury's determination was correct, but whether it was rational.[3]  "We do not delve into the evidentiary weeds: The jury 'retains the sole authority to weigh any conflicting evidence and to evaluate the credibility of witnesses.'"[4]

The evidence at trial established that Naranjo and her husband drove eight hours to pick up four illegal aliens just north of the Mexican border; before arriving, one alien texted Naranjo a photograph of the pick-up location and a GPS pin of his location; Naranjo and her husband then drove the aliens

---

[1] *See United States v. Garcia-Gonzalez*, 714 F.3d 306, 313 (5th Cir. 2013) ("Because [defendant] moved for a judgment of acquittal at the close of the government's case, the panel reviews *de novo* the question of whether the evidence was sufficient to support his conviction.").

[2] *United States v. Vargas-Ocampo*, 747 F.3d 299, 301 (5th Cir. 2014) (en banc) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

[3] *See United States v. Burton*, 126 F.3d 666, 677 (5th Cir. 1997).

[4] *United States v. Scott*, 892 F.3d 791, 796-97 (5th Cir. 2018) (quoting *United States v. Grant*, 683 F.3d 639, 642 (5th Cir. 2012)).

further into the United States on a highway known for alien smuggling; they dropped the aliens off ahead of a border checkpoint; and Naranjo believed the aliens were supposed to pay a smuggler who arranged for their transport. The aliens were later apprehended north of the checkpoint, with one in possession of Naranjo's cellphone. Although she stated once during interrogations with law enforcement that her husband provided the aliens the cellphone, Naranjo admitted numerous times during the interrogations that she was the one who furnished it to them and that the aliens were going to use it "for the part where they were going to run" and to contact a smuggler. Considered in the requisite light most favorable to the Government, the evidence was sufficient for a rational juror to conclude Naranjo knew or recklessly disregarded that the aliens were in the United States unlawfully and agreed with at least one other person to transport them.[5]

## II

Naranjo's Confrontation Clause claim is reviewed de novo but "subject to a harmless error analysis."[6] "We assume without deciding that the [transcript] violated the Confrontation Clause."[7] "We nevertheless affirm because we are convinced that the error was 'harmless beyond a reasonable doubt.'"[8] That standard requires the Government to show

---

[5] *See United States v. Jimenez-Elvirez*, 862 F.3d 527, 534 (5th Cir. 2017) ("The elements of conspiracy may be established solely by circumstantial evidence, including 'the presence, association, and concerted action of the defendant with others.'" (quoting *United States v. Thomas*, 690 F.3d 358, 366 (5th Cir. 2012))).

[6] *See United States v. Bell*, 367 F.3d 452, 465 (5th Cir. 2004) (citing *United States v. McCormick*, 54 F.3d 214, 219 (5th Cir. 1995)).

[7] *See United States v. Sarli*, 913 F.3d 491, 496 (5th Cir. 2019).

[8] *Id.* (quoting *United States v. Jimenez*, 464 F.3d 555, 562 (5th Cir. 2006)).

No. 21-50726

"there was 'no reasonable possibility that the tainted evidence might have contributed to the jury's verdict of guilty.'"[9]

Naranjo argues that the transcript violated her confrontation right because Agent Donaldson, in his questions to her, repeated statements that were allegedly made by co-conspirators who were not available to testify at trial. The statements were presented to her as the story her alleged co-conspirators had told, and Donaldson asked Naranjo if everything was true.

The district court, in admitting the transcript over objection, twice issued a limiting instruction to the jury that "the statements of the agent in the video regarding what some other person or persons told him [are] not introduced to prove the truth of the matter asserted." In the Confrontation Clause context evaluating a limiting instruction, we have explained "[t]he almost invariable assumption is that jurors follow such instructions. To overcome this presumption, there must be an overwhelming probability that the jury will be unable to follow the court's instruction . . . and a strong likelihood that the effect of the evidence would be devastating to the defendant."[10] No such probability has been shown here.

---

[9] *United States v. Buluc*, 930 F.3d 383, 392 (5th Cir. 2019) (quoting *United States v. Jones*, 930 F.3d 366, 379 (5th Cir. 2019)).

[10] *United States v. Moparty*, 11 F.4th 280, 292 (5th Cir. 2021) (first quoting *United States v. Ramos-Cardenas*, 524 F.3d 600, 611 (5th Cir. 2008); and then quoting *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987)) (internal quotation marks and citations omitted); *see also United States v. Acosta*, 475 F.3d 677, 683 (5th Cir. 2007) ("Juries are presumed to follow limiting instructions. Because the statement was not admitted to establish the truth of the matter asserted, it does not contravene *Crawford*." (citing *United States v. Bieganowski*, 313 F.3d 264, 288 (5th Cir. 2002)); *Tennessee v. Street*, 471 U.S. 409, 415 n.6 (1985)) ("The assumption that jurors are able to follow the court's instructions fully applies when rights guaranteed by the Confrontation Clause are at issue." (citing *Frazier v. Cupp*, 394 U.S. 731, 735 (1969))).

Further, "[t]he potentially problematic sections of the [transcript] were all proven by other testimony, and therefore there is no reasonable probability that the jury would have reached a different conclusion had those sections been redacted."[11]  All of the information in the agent's questions was admitted by Naranjo herself or substantiated by other evidence at trial. The only part of the agent's statement Naranjo disagreed with in the interrogation was that "the people they picked up were gonna pay them later . . . for the ride."  The jury, however, found for Naranjo on that point. This indicates both that she could not have been harmed on this point and that the jury credited Naranjo's admissions rather than the agent's questions.

Finally, "[t]o decide how harmful the challenged evidence was, we consider how it was used.  If the government relied on the violative testimony in its closing argument, we are more likely to conclude that the error was harmful.  If the government makes only 'fleeting references' to the unconstitutional evidence, we are less likely to find harm."[12]  Here, "[t]he prosecution essentially pointed to [Naranjo's] own account of what happened and asked the jury to draw the only reasonable inference

---

[11] *See United States v. McClaren*, 13 F.4th 386, 416 (5th Cir. 2021), *cert. denied sub nom. Fortia v. United States*, 142 S. Ct. 1244 (2022) ("The factual basis contained information from three people who purchased crack from Gracin and did not testify, which was cumulative evidence of Gracin's own involvement in the drug conspiracy, which he admitted at trial."); *United States v. Bedoy*, 827 F.3d 495, 512 (5th Cir. 2016) ("Even assuming—without deciding—that *Crawford* proscribes Agent Minor's testimony, we find that any error in admitting the tapes was harmless beyond a reasonable doubt.  The content of the Mazzei phone calls was cumulative: there was substantial evidence that Bedoy knew of or foresaw a federal grand jury investigation—namely, Bedoy's and Sysy's own statements, which Bedoy concedes were properly admitted.").

[12] *United States v. Hamann*, 33 F.4th 759, 771 (5th Cir. 2022) (first citing *United States v. Alvarado-Valdez*, 521 F.3d 337, 342 (5th Cir. 2008); and then citing *United States v. Sarli*, 913 F.3d 491, 498 (5th Cir. 2019)).

No. 21-50726

available."[13]  The prosecution did not focus on the agent's statements in its opening or closing; it emphasized over and over again that the jury should focus on Naranjo's words.  "By contrast, in cases where we've granted relief, the defendant's involvement was hotly contested, and the prosecution depended on out-of-court testimony to identify the defendant as a participant in the crime."[14]  Accordingly, even if there was a Confrontation Clause error in admitting the transcript and recording, it was harmless.

\* \* \*

For the reasons stated, the judgment of the district court is AFFIRMED.

---

[13] *Sarli*, 913 F.3d at 497.

[14] *Id.* at 496-98 ("To overturn a conviction based on mere fleeting references to out-of-court statements would be tantamount to establishing a rule of per se harm.  Our precedents, by contrast, require not just speculation, but a 'reasonable possibility' that the error contributed to the conviction.  Meeting that standard requires far more than this case involves.").