# United States Court of Appeals
# for the Fifth Circuit

---

No. 22-30821

---

United States of America,

*Plaintiff—Appellee*,

*versus*

Evaristo Contreras Silva,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:22-CR-50-1

---

Before Smith, Graves, and Wilson, *Circuit Judges*.
Cory T. Wilson, *Circuit Judge*:

A jury convicted Evaristo Contreras Silva, a citizen of Mexico, of possession of a firearm by an illegal alien, in violation of 18 U.S.C. § 922(g)(5), after he admitted at trial that he possessed a firearm and was unlawfully in the United States. He appeals his conviction, contending the Government failed to prove beyond a reasonable doubt that he knew he was unlawfully in the United States when he possessed the firearm in question. We affirm.

No. 22-30821

## I.

## A.

Much of the evidence in this case is uncontroverted. At trial, Contreras Silva admitted that he illegally came into the United States for the first time in 1998 or 1999. In 1999, he was arrested along the Texas-Mexico border but voluntarily returned to Mexico. It appears his most recent unlawful re-entry was in June 2008.

In May 2018, the Department of Homeland Security (DHS) detained him, and he was "charged . . . with being illegally in the United States." While in custody, Contreras Silva was informed by DHS that he was in the United States illegally. He also received an I-94 Form at the time of his arrest. Contreras Silva's I-94 Form states:

> You are required to retain this permit in your possession and to surrender it to the transportation line at the time of your departure unless you depart over the land border of the United States in which case you must surrender it to a Canadian immigration officer on the Canadian border, or to a United States immigration officer o[n] the Mexican border.

Contreras Silva received an immigration bond and was released from custody in August 2018, approximately three months after his arrest. His bond conditions required that he not be arrested again and that he not drive without a driver's license.

Since his arrest, Contreras Silva has filed various applications to change his immigration status, including two applications, in 2018 and 2020, for "Cancellation of Removal and Adjustment of Status for Certain Nonpermanent Residents." He also completed an "Application for Asylum

and for Withholding of Removal."[1]  In these applications, he admitted that he entered the United States without inspection and without admission.  His applications also include a request for review of his immigration status by an immigration judge.  A hearing on his various applications was continued to January 2023.

On February 2, 2022, Contreras Silva's pregnant wife called police, alleging he punched and kicked her and threatened to shoot her in the stomach.  Law enforcement officers came to Contreras Silva's home to investigate the call and asked Contreras Silva for identification.  Contreras Silva walked over to his truck with the officers, unlocked the door, and opened the middle console.  One officer noticed a gun in the console.  Contreras Silva admitted he possessed a firearm and did not try to hide the gun from the officers.  Two weeks later, law enforcement officers obtained a search warrant for Contreras Silva's truck, where they found the loaded firearm.  A search of his residence yielded several rounds of ammunition.  He was charged with possession of a firearm by an illegal alien in violation of 18 U.S.C. § 922(g)(5)(A) and proceeded to trial.

## B.

Notwithstanding these uncontroverted facts, Contreras Silva testified at trial that he believed he was lawfully in the United States at the time he possessed the firearm, based on the I-94 Form he received from DHS and his interactions with immigration officials.  The thrust of Contreras Silva's testimony was that the I-94 Form he received at the time of his arrest was a "permit" given to him "to be legally [in the United States] until [his] case [was] done."  He testified that this belief stemmed from the I-94 Form's

---

[1] The date on the Application for Asylum and for Withholding of Removal is either blocked out or not contained in the document.

wording that Contreras Silva was "required to retain this *permit* in [his] possession . . . ." (emphasis added). For corroboration, he pointed to the testimony of Department of Homeland Security deportation officer Marlowe Spellman, who testified at trial that immigrants receive an I-94 Form when they "legally enter the United States. It gives you the reason you are admitted, and it also gives you the length of time you're allowed to stay."

Contreras Silva also testified that other interactions support his belief that he was lawfully present in the United States: conversations with an attorney while in custody in 2018; adherence to his bond conditions; and submitting his biometrics in response to DHS notices. Moreover, he stated that when he was submitting his biometrics, he was told that he would receive a "green card" and may not need to return to court in 2023. Thus, Contreras Silva asserted that even though he unlawfully *entered* the United States, he did not know he was unlawfully *present* in the United States after receiving the I-94 Form and because of various interactions after he left DHS custody in 2018.

However, Contreras Silva admitted that he received "notices to appear" that "didn't give [him] rights to citizenship or any rights" and expressly required him to submit biometrics. Indeed, the Government introduced one such notice sent to Contreras Silva, a Form I-797C "Notice of Action," which is sent to a petitioner to provide status updates on immigration applications. The top of the notice conspicuously states, "THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT." And Contreras Silva conceded, during opening argument, that despite his stated belief, he was in the United States unlawfully.

Ultimately, the jury convicted Contreras Silva. He moved for judgment of acquittal three times: after the Government's case-in-chief, after the defense rested, and after the verdict. At base, these motions urged

that the Government failed to provide sufficient evidence to "contradict[] the reasonableness of Mr. Contreras [Silva's] belief or the truthfulness of [his] testimony," and thus failed to prove beyond a reasonable doubt that Contreras Silva knew he was in the United States illegally. The district court overruled his motions, and Contreras Silva now appeals, raising the same argument.

## II.

Because Contreras Silva moved for a judgment of acquittal at the end of the Government's case-in-chief and at the close of trial, he properly preserved his sufficiency of the evidence argument. *See United States v. Danhach*, 815 F.3d 228, 235 (5th Cir. 2016). We therefore review *de novo* the district court's denial of his motions. *Id.*; *United States v. Buluc*, 930 F.3d 383, 387 (5th Cir. 2019) (citing *United States v. Campbell*, 52 F.3d 521, 522 (5th Cir. 1995)). "In doing so, we ask 'whether a reasonable jury could conclude that the evidence presented, viewed in the light most favorable to the [G]overnment, established the defendant's guilt beyond a reasonable doubt.'" *Buluc*, 930 F.3d at 387 (quoting *United States v. Duncan*, 164 F.3d 239, 242 (5th Cir. 1999)).

## III.

At trial, the Government was required to prove beyond a reasonable doubt that at the time he possessed the firearm and ammunition, Contreras Silva knew he was an alien illegally or unlawfully in the United States. *See Rehaif v. United States*, 139 S. Ct. 2191 (2019). Contreras Silva argues that the Government failed to offer evidence sufficient to prove he had the requisite knowledge.

Specifically, *Rehaif* requires that in a prosecution under 18 U.S.C. § 922(g), the Government must prove that a "defendant knew he possessed a firearm *and* that he knew he belonged to the relevant category of persons

barred from possessing a firearm." *Id.* at 2200 (emphasis added). The Court reasoned that "possession of a gun can be entirely innocent . . . . It is therefore the defendant's *status*, and not his conduct alone, that makes the difference." *Id.* at 2197 (internal citations omitted). The Court determined that requiring proof of knowledge as to both possession and status under § 922(g) "helps advance the purpose of scienter, for it helps to separate wrongful from innocent acts." *Id.*[2]

On appeal, Contreras Silva repeats his contentions that he did not know he was in the United Status unlawfully and that the Government failed to produce evidence to the contrary. More precisely, Contreras Silva asserts:

> [H]e believed he was legally in the United States from the time he was released from immigration custody until the immigration judge ruled on his applications for asylum and for withholding of removal and for cancellation of removal and adjustment of status for certain nonpermanent residents.

He substantiates this belief with the same support he offered during trial: the I-94 Form's "permit" language; "advice from his immigration attorneys while he was in immigration custody"; Spellman's testimony; his adherence to his bond conditions; and the various applications he submitted to change his unlawful status after his arrest. He also notes that he "possessed the firearm and ammunition openly and admittedly while he thought he had a permit that made his continued presence in the United States lawful." He contends that, by contrast, "[t]he Government presented no evidence that

---

[2] Hamid Rehaif, the petitioner in *Rehaif*, was prosecuted for "possessing firearms as an alien unlawfully in the United States, in violation of [18 U.S.C.] § 922(g)." *Id.* at 2194. While the Court "express[ed] no view . . . about what precisely the Government must prove to establish a defendant's knowledge of status in respect to other § 922(g) provisions," *id.* at 2200, because this case concerns the same fact pattern as in *Rehaif*, i.e., an unlawful alien possessing a firearm, we need not extrapolate here.

contradicted the reasonableness of [his] belief or the truthfulness of [his] testimony" and thus "failed to prove beyond a reasonable doubt that . . . he knew he was an alien illegally or unlawfully in the United States" when possessing the firearm.

But, as the Government argues in response, there was a plethora of evidence to rebut Contreras Silva's assertion that he believed he was in the United States lawfully. Reviewing this evidence in the light most favorable to the Government as the prevailing party, we agree that a reasonable jury could (and did) determine that Contreras Silva knew he was unlawfully in the United States.

Contreras Silva conceded that he entered the country unlawfully without inspection or admission sometime in 2008 (and had done so before that time). In May 2018, DHS detained him, informed him that DHS considered him unlawfully present, and placed him in removal proceedings. It was on the day of his arrest that he received the I-94 Form "permit," on which he stakes much of his case—but he remained in custody for three months after receiving it, belying the notion that the form meant he was in the country lawfully. Similarly, paperwork for his bond informed him that the Government had charged him with being "unlawfully in the United States." And as late as 2020, Contreras Silva himself completed an application for "Cancellation of Removal and Adjustment of Status for Certain Nonpermanent Residents," on which he stated that he had not been inspected at the border or admitted into the United States. Finally, as the Government points out, there is the "common-sense inference of knowledge stemming from Contreras Silva's own admission that he knew his applications for a change in immigration status were still pending at the time he possessed the firearm." Taken together, a jury could rely on this evidence to find that Contreras Silva had the requisite knowledge of his unlawful status at the time he possessed the firearm at issue.

In short, Contreras Silva's reliance on the I-94 Form, Spellman's testimony about its import, and his immigration bond is misplaced. While the evidence may have supported putting the question of his knowledge to the jury, neither the I-94 Form, Spellman's testimony that an alien receives an I-94 Form upon lawful entry, nor Contreras Silva's release from custody pending his immigration proceedings undercuts the Government's argument that Contreras Silva knew that his status was never changed from unlawful to lawful.[3] Put differently, the evidence in Contreras Silva's favor was sufficient to create a triable issue; it was not so definitive to allow that issue to be taken from the jury via a judgment of acquittal.

\*　　\*　　\*

The Government provided sufficient evidence under *Rehaif* for a reasonable jury to find, beyond a reasonable doubt, that Contreras Silva knew he was in the United States unlawfully when he possessed a firearm. That there was evidence pointing in the other direction does not in itself justify a judgment of acquittal. The jury weighed the evidence, including Contreras Silva's testimony, and concluded that he knew he was in the United States unlawfully. The jury's verdict was not unreasonable or based on insufficient evidence. Therefore, Contreras Silva's conviction is

AFFIRMED.

---

[3] Contreras Silva interposes that his position is bolstered because he possessed the "firearm and ammunition openly and admittedly." This argument does not sustain his position. First, there is testimony that a law enforcement officer saw the gun and asked about it—not that Contreras Silva openly disclosed it. Even discounting that evidence, the jury was still presented with evidence on both sides of the ledger, and it was free to weigh both evidence and witness credibility in reaching its verdict.

No. 22-30821

JAMES E. GRAVES, JR., *Circuit Judge*, dissenting:

I disagree with the majority that there was sufficient evidence to support the jury's finding that Evaristo Contreras Silva (Contreras) knew he was in the United States unlawfully when he possessed a firearm. Because I would reverse and remand, I respectfully dissent.

As stated by the majority, Contreras is a citizen of Mexico who has previously crossed the border unlawfully. In 2018, the Department of Homeland Security obtained an immigration arrest warrant for Contreras and initiated removal proceedings. As a result, Contreras filed various applications for cancellation of removal, adjustment of immigration status and asylum. He also obtained an immigration bond pending the adjudication of his petitions. The order granting bond included only two conditions, "(1) No arrests; (2) No driving without a valid driver's license," and said nothing in reference to possessing a firearm. Contreras' immigration case was still pending at the time of appeal.

Contreras and his wife were involved in a domestic dispute in February of 2022. On February 2, Deputy Brian Bell and Sergeant Michael Lombardino with the Bossier Parish Sheriff's Office met with Contreras at his home in Haughton, Louisiana. Contreras admitted to officers that he had a gun in the console of his truck.

Deputies subsequently obtained a warrant and arrested Contreras at home on February 16 for the previous domestic abuse battery. Presumably, deputies notified the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) that Contreras had a firearm in his truck. ATF agents obtained a search warrant for Contreras' truck where they found a Hi-Point 9mm Luger pistol loaded with seven rounds of ammunition. Additional ammunition was found inside the home.

An immigration record check indicated that Contreras was unlawfully present in the United States.  On March 1, 2022, Contreras was transferred to federal custody for this case.  The following week, Contreras was indicted in the Western District of Louisiana on a single count of possession of a firearm and ammunition by an illegal noncitizen in violation of 18 U.S.C. § 922(g)(5).

Contreras went to trial later that year.  Contreras unsuccessfully moved for a judgment of acquittal at the close of the government's case and at the end of the trial.  The jury convicted Contreras on August 16, 2022. The district court sentenced Contreras on December 13, 2022, to fifteen months imprisonment, consecutive to any sentence he may receive in the pending state domestic abuse battery case.  Contreras then filed this appeal.

Under 18 U.S.C. § 922, it is illegal for a noncitizen who is unlawfully in the United States "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."  18 U.S.C. § 922(g)(5).  A separate provision states that anyone who "knowingly" violates this section shall be fined or imprisoned for up to 10 years. 18 U.S.C. § 924(a)(2).

The parties here stipulated to facts establishing all but one element of the offense –whether Contreras knew he was in the United States unlawfully when he possessed the firearm.  Contreras asserts that he believed he was legally in the United States when he possessed the firearm and ammunition. His belief was based on advice from his lawyers and the I-94 Form given to him by the government when he was released on bond pending the resolution of his immigration matters.  As quoted previously by the majority, the I-94 clearly states that it is a "permit" to be in the United States.  Contreras also

asserts that the government failed to offer sufficient evidence in opposition to his testimony and evidence.

The Supreme Court considered the scope of the word "knowingly" in *Rehaif v. United States*, 139 S.Ct. 2191 (2019). In that case, Hamid Rehaif entered the United States on a nonimmigrant student visa to attend a university. *Id.* at 2194. Rehaif received poor grades and was dismissed from the school, which told him that his immigration status would be terminated unless he transferred to a different school or left the United States. *Id.* Rehaif did not do either. The government later discovered that he had visited a firing range for target practice and prosecuted him for being a noncitizen unlawfully in the country and in possession of firearms. At the close of Rehaif's trial, the judge instructed the jury that the government was not required to prove that Rehaif knew he was unlawfully in the United States. The Court of Appeals for the Eleventh Circuit affirmed. The Supreme Court granted certiorari and reversed, saying: "We hold that the word 'knowingly' applies both to the defendant's conduct and to the defendant's status. To convict a defendant, the Government therefore must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." *Rehaif*, 139 S.Ct. at 2194. In so doing, the Court also said:

> [O]ur reading of § 922(g) and § 924(a)(2) is consistent with a basic principle that underlies the criminal law, namely, the importance of showing what Blackstone called "a vicious will." . . . As this Court has explained, the understanding that an injury is criminal only if inflicted knowingly "is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil."

*Id*. at 2196 (internal citations omitted).

No. 22-30821

The government asserts that Contreras was repeatedly informed that his "unlawful" immigration status had not changed. However, this assertion appears to be another way of saying that ignorance of the law is no excuse, an argument that the Supreme Court also addressed in *Rehaif*, saying:

> This maxim, however, normally applies where a defendant has the requisite mental state in respect to the elements of the crime but claims to be "unaware of the existence of a statute proscribing his conduct." . . . In contrast, the maxim does not normally apply where a defendant "has a *mistaken impression* concerning the legal effect of some collateral matter and that mistake results in his misunderstanding the full significance of his conduct," thereby negating an element of the offense.

*Id*. at 2198 (internal citation omitted) (emphasis added).

The Court also referenced its consideration of this distinction in *Liparota v. United States*, 471 U.S. 419, 420 (1985), a case involving a statute imposing criminal liability on the use of food stamps in any unauthorized manner where it required the government "to prove that the defendant knew that his use of food stamps was unlawful – even though that was a question of law." *Rehaif*, 139 S.Ct. at 2198. The Court also said:

> This case is similar. The defendant's status as an alien "illegally or unlawfully in the United States" refers to a legal matter, but this legal matter is what the commentators refer to as a "collateral" question of law. A defendant who does not know that he is an alien "illegally or unlawfully in the United States" does not have the guilty state of mind that the statute's language and purposes require.

*Id*. at 2198.

Neither the government nor the majority here point to any evidence illustrative of a vicious or evil will. *Id*. at 2196. While Contreras knew that the government was alleging that he was here illegally, he also knew that he

12

had been granted bond and allowed to stay in the country pending the resolution of his immigration matters. Additionally, he was in possession of a Form I-94 "permit," which even the deportation officer from the Department of Homeland Security, Immigration and Customs Enforcement testified "is what you receive when you legally enter the United States. It gives you the reason you are admitted, and it also gives you the length of time you're allowed to stay." The government dismisses this as "just an inartful way of explaining that all foreign nationals found in the United States, legal or not, are documented via I-94 once located." The government also states that Contreras "does not dispute that the I-94 had no actual effect on his immigration status (only that he thought it did) . . . ."

The government's acknowledgement that Contreras "thought it did," undercuts the government's case. If Contreras thought it did have an effect, then he could not have also known that it did not have an effect. This goes back to the government's ignorance of the law argument which the Supreme Court said in *Rehaif* does not apply here where Contreras "has a mistaken impression concerning the legal effect of some collateral matter and that mistake results in his misunderstanding the full significance of his conduct." *Id.*, 139 S.Ct. at 2198.

Further, if even the deportation officer believed the I-94 was as he described it, then it is in no way a stretch that Contreras would believe the same. Additionally, while Contreras knew that he had initially crossed the border unlawfully, he also knew that he had since been in the United States several years, was married to a U.S. citizen, had a family, worked, paid taxes, and had an immigration bond and a "permit" allowing him to stay pending resolution of his immigration case. Also, on the DHS Form I-826, Notice of Rights and Advisals, Contreras initialed beside the following statement: "I request a hearing before the Immigration Court to determine whether I may remain in the United States." He did not initial beside the statement that

included, "I admit that I am illegally in the United States."  Moreover, he did not try to hide the fact that he had the firearm from authorities.  All of that indicates that Contreras lacked "the guilty state of mind that the statute's language and purposes require."  *Id.*

The government had the burden of proof to provide sufficient evidence that Contreras knew he was in the category barred from possessing a firearm.  Even if the jury implicitly deemed Contreras' testimony that he did not know he was in that category as not credible, it in no way makes up for the government's failure to offer evidence that he knew otherwise.  Instead, the government conceded that Contreras "thought" the I-94 "permit" had an effect on his immigration status.  That "mistaken impression" falls squarely within *Rehaif*.  *Id.* at 2198.

For these reasons, I would reverse and remand.  Thus, I respectfully dissent.